517 A.2d 349

**Joy M. Renehan STALEY et al.**

v.

**BOARD OF EDUCATION OF WASHINGTON COUNTY et al.**

**No. 30, Sept. Term, 1986.**

Court of Appeals of Maryland.

Nov. 14, 1986.

---

William C. Wantz (Kaylor & Wantz, on the brief), Hagerstown, for appellants.

Russell R. Marks (Mackley, Gilbert & Marks, on the brief), Hagerstown, for appellees.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ., and MARVIN H. SMITH, Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

COUCH, Judge.

We are here concerned with the obligation of an employer and its insurer to pay legal fees to a claimant's attorney under the Workmen's Compensation statute.

## I

The facts in this case are not in dispute. Joy M. Renehan Staley, the appellant (claimant), was a school teacher employed by the Board of Education of Washington County. During the course of her employment, she fractured her hip. The Workmen's Compensation Commission (Commission) concluded that she had suffered a permanent partial disability amounting to fifty percent industrial loss of the use of her body as a result of the injury. Accordingly, the Commission ordered the Board of Education, the employer, and the Twin City Fire Insurance Company, the insurer,[1] to pay her disability benefits of $166.00 per week for 333 weeks, a total of $55,278.00, beginning August 16, 1982.

The employer and the insurer appealed the award to the Circuit Court for Washington County. After a *de novo* bench trial, the court determined that the Commission had erred, and that the claimant actually suffered permanent partial disability amounting to thirty-five percent industrial loss of the use of her body. The claimant's award was modified to reflect this new finding. Benefits were reduced to a rate of $83.00 per week for 175 weeks, a total of $14,525.00, beginning August 16, 1982.

During the pendency of the circuit court appeal, the appellees continued to pay compensation benefits to the claimant at the original rate of $166.00 per week as obligated by law. By the time the claimant's award was modified, the appellees had already paid her a total of $23,900.68, which exceeded the amount due her under the Commission's modified award by $9,375.68.[2]

It was also during the pendency of the appeal, February 16, 1984, that the claimant's attorney, William C. Wantz,

1. We shall refer to the employer and the insurer collectively as "appellees."

2. Appellees are not entitled to recover any overpayment from the claimant. *See St. Paul Fire and Marine Ins. Co. v. Treadwell*, 263 Md. 430, 283 A.2d 601 (1971).

filed a legal fee petition with the Commission. The petition was subsequently approved in the amount of $6,100.00. When the claimant's disability award was subsequently modified, Mr. Wantz filed a revised petition for attorney's fees, which the Commission approved on February 7, 1985 in the reduced amount of $3,255.00. Both orders specified that the legal fees were to be paid from the final weeks of compensation due the claimant. The appellees did not file an appeal from either of these orders.

When claimant's attorney did not receive payment from the appellees, he filed issues with the Commission in an attempt to require appellees to pay the fee awarded. In an order dated May 23, 1985, the Commission again found Mr. Wantz to be entitled to counsel fees as set forth in its previous modified fee order of February 7. Appellees appealed this order to the Circuit Court for Washington County. Pursuant to an order granting leave to intervene, claimant's attorney, *pro se,* filed a complaint against appellees seeking enforcement of the fee order. The circuit court entered judgment in favor of claimant's attorney and ordered the appellees to pay the fee. The appellees then filed an appeal with the Court of Special Appeals, which reversed the judgment of the circuit court. We issued a writ of certiorari to review the decision of the intermediate appellate court.

The issue before us is whether the appellees must pay $3,255.00 in legal fees to the claimant's attorney even though the amount already paid to the claimant exceeded the total sum due her under the modified award. Reversing the circuit court, the Court of Special Appeals concluded that the appellees were under no such obligation. 66 Md. App. 390, 504 A.2d 653 (1986). We now reverse the judgment of that court.

## II

Our analysis begins with Maryland Code (1957, 1985 Repl.Vol.), Art. 101, § 57, which provides in part:

"No person shall charge or collect any compensation for legal fees in connection with any claims arising under this article, or for services or treatment rendered or supplies furnished pursuant to § 37 of this article, unless the same be approved by the Commission. When so approved, such fee or claims shall become a lien upon the compensation awarded, but shall be paid therefrom only in the manner fixed by the Commission."

Section 57 represents a comprehensive scheme by which an award of attorney's fees is to be regulated. As we noted in *Chanticleer Skyline Room, Inc. v. Greer*, 271 Md. 693, 699–700, 319 A.2d 802, 805 (1974), this provision safeguards competing interests. By providing the Commission with the power to regulate the amount of remuneration an attorney should receive, the provision "acts to prohibit the dissipation of an employee's compensation through the payment of excess legal fees out of the award." *Id.* at 699, 319 A.2d at 805. On the other hand, in light of this legislative intrusion into the attorney-client relationship, this section protects a claimant's counsel by imposing a charging lien[3] for his benefit on the compensation awarded the employee in the amount of the fee. *Id.* at 700, 319 A.2d at 805. *See Feissner v. Prince George's County*, 282 Md. 413, 418, 384 A.2d 742, 746 (1978).

We have had occasion to discuss in some detail the nature and operation of this attorney fee system. In *Feissner*, 282 Md. at 418, 384 A.2d at 745, we noted that section 57 does not treat attorney's fees as an "add on" or "double" benefit, which the injured employee is entitled to receive from his employer in addition to the compensation award itself. The employee receives only one award from which his legal fees are to be paid. We said:

"[T]he payment of legal fees does not become an independent obligation of the employer or his insurer, but instead

---

**3.** Maryland does not recognize a charging lien in the absence of statute. *See Diamond v. Diamond*, 298 Md. 24, 35, 467 A.2d 510, 516 (1983) (and cases cited therein).

remains at all times the personal responsibility of the claimant. Thus legal fees are not among the enumerated benefits available to the claimant from his employer under the workmen's compensation laws of this state."

*Id.*

In order to ensure payment of such fees, section 57 provides the attorney with a lien upon the compensation award in an amount equal to the fee approved by the Commission. *Chanticleer,* 271 Md. at 700, 319 A.2d at 805. This charging lien places a charge upon the award as security for the debt owed to the attorney by the claimant. *Id.* at 701, 319 A.2d at 806.

In order to effectuate the operation of the attorney's lien, the Workmen's Compensation Commission has promulgated Rule 21F: [4]

"The filing of a petition for a fee with the Commission and service of a copy on the employer and insurer, self-insurer, or the State Accident Fund, as the case may be, shall be notice to the employer and insurer, self-insurer, or the State Accident Fund, to reserve in escrow the amount of fee requested in the petition until a fee is approved by the Commission."

COMAR 14.09.01.21F. According to this Rule, when a claimant's attorney files a fee petition with the Commission, the employer and the insurer must reserve in escrow a portion of the disability award in an amount equal to the requested fee.[5] Once the petition is approved, the attorney's lien comes into play and attaches to the claimant's award to the extent of the fees approved by the Commis-

---

**4.** Rule 21F was promulgated under the authority of Md.Code (1957, 1985 Repl.Vol.), Art. 101, § 10. Rules adopted pursuant to statutory authority have the force and effect of law. *Maryland Port Admin. v. John W. Brawner Contracting Co.,* 303 Md. 44, 60, 492 A.2d 281, 289 (1985).

**5.** This amount in escrow may be reduced if the Commission subsequently approves a fee that is less than the amount requested by the attorney in his initial fee petition.

sion. As we recognized in *Hoffman v. Liberty Mutual Insurance Company*, 232 Md. 51, 55, 191 A.2d 575, 577 (1962), the lien will attach to the segregated compensation funds held in escrow. As we summarized:

> "The effect of the above mentioned statute and rule is to impose a lien in the amount of the attorney's fee upon a part of the award equal to the amount of the fee approved by the Commission, which is to be held in escrow by the insurer. It is this amount in escrow to which the lien attaches. This is an interception of the money in the hands of the insurer."

*Id.* This "interception," in effect, bars direct payment to the claimant of a portion of his compensation.

This escrow account and the lien on the funds therein remain in existence until the attorney receives his due compensation.[6] *See id.* at 55–6, 191 A.2d at 577–79. Since the lien and the escrow do not extinguish at any earlier date, the claimant's attorney is assured that no future contingency will jeopardize the payment of his fees. This is consistent with the often recognized purpose of section 57 and Rule 21F—the protection of attorneys who represent claimants in Workmen's Compensation cases. *Id.* at 55–6, 191 A.2d at 578.

### III

■ Our application of the foregoing principles to the present case leads us to conclude that appellees must pay the claimant's attorney the sum of $3,255.00, as approved by the Commission in its orders of February 7, 1985 and May 23, 1985.

The claimant's attorney filed his initial fee petition for $9,891.70 with the Commission on February 16, 1984. On that date, the appellees were put on notice to segregate that

---

6. Once the initial fee petition is approved, the amount in escrow may be reduced if, after an appeal, the attorney files a revised fee petition, of which the Commission approves. *See Hoffman*, 232 Md. at 55–6, 191 A.2d at 578.

amount from the claimant's compensation award and to place the sum in an escrow account. Once the attorney's fee petition was approved in the amount of $6,100.00, his lien materialized and attached to that amount in the escrow. The only effect of the Commission's subsequent modified fee award was to change the sum held in the escrow account to $3,255.00. *See Hoffman,* 232 Md. at 55–6, 191 A.2d at 578.

Since, as we have noted earlier, the escrow account and the lien on the funds therein remain in existence until counsel is paid, claimant's attorney still has a lien on the $3,255.00. The escrow account and the lien were not extinguished when the circuit court subsequently reduced the claimant's compensation award to $14,525.00, a sum below what she had already received. *Id.* at 55, 191 A.2d at 578. Our decision in *Hoffman* makes clear that when a compensation award is reduced on appeal, such that an overpayment occurs, an insurer cannot offset any losses and extinguish the attorney's lien by recouping the funds held in escrow for claimant's counsel. As we noted in *Chanticleer,* 271 Md. at 701, 319 A.2d at 806, "no one can gain priority over this statutory attorney's lien.... [T]he funds which have been secured for [the attorney's] benefit cannot be applied to reimburse an insurer for an overpayment to a claimant."

*Hoffman* dictates the outcome of the present case. In that decision, the Workmen's Compensation Commission awarded disability benefits to the claimant for an accidental injury sustained during the course of his employment. Although the insurer began immediately paying the claimant, it appealed the decision to the circuit court. During the pendency of the appeal, the Commission also approved the fee petition of claimant's counsel. Pursuant to a precursor of Rule 21F, the insurer placed that amount in escrow until the appeal was decided.

The Commission's initial disability award was subsequently reduced on appeal. As in the present case, the insurer

had already paid the claimant an amount that exceeded the total sum due him under the modified award. Consequently, the insurer refused to pay the attorney any funds from the escrow account. It argued that when the court, on appeal, reduced the amount of the award, no money remained in its possession upon which the lien could attach.

Rejecting the insurer's contention, our predecessors held, speaking through Judge Marbury, that an insurance carrier cannot defeat the attorney's statutory lien by applying funds held in escrow to satisfy an overpayment made to a claimant. *Hoffman*, 232 Md. at 55–6, 191 A.2d at 578. The lien attached to the funds held in escrow when the Commission issued its initial fee order. The insurer was compelled at all times to keep in the escrow account an amount equal to the ultimate fee. The appeal did not affect the existence of either the lien or the funds in the account. *Id.* at 55, 191 A.2d at 578.

What we said in *Hoffman* applies equally as well in this case:

> "The appellee cannot set aside in escrow the original fee, prosecute an appeal resulting in a lower award, and then take the position that the attorney's lien does not apply. This would defeat the purpose of the law [section 57] and the rule [Rule 21F] adopted pursuant thereto [which is to protect attorneys]."

*Id.* at 56, 191 A.2d at 578. Any overpayment to the claimant results from the operation of law and should not have a prejudicial effect on the attorney's lien on the funds held in escrow. *Id.*

## IV

Accepting the appellees' position in this case, the Court of Special Appeals below argued that there was no fund to which the attorney's lien could attach. In their view, the appellees were to accumulate funds for the escrow account only from the final weeks of compensation due the claimant, as ordered by the Commission. However, once the claimant's award was reduced on appeal, the appellees were no

longer able to reserve funds for the benefit of the attorney. "The point at which they were to begin holding funds for the benefit of the attorney was never reached because when the award was reduced the funds had been exhausted by the payments already made by appellants up to that date." 66 Md.App. at 395, 504 A.2d at 655–56 (footnote omitted). As the court summarized, "The Commission ... ordered appell[ees] to pay the claimant first and then pay her attorney from the final weeks due. Those weeks never arrived." *Id.* at 396, 504 A.2d at 656 (footnote omitted).

We reject this approach for two reasons. First, the foregoing argument ignores the clear requirement of Rule 21F that compensation funds must be placed in an escrow account no later than *at the time the attorney files his fee petition.* At that point, there is an "interception" of funds from the hands of the insurer into the escrow account. The charging lien will then attach to those funds when the Commission approves the fee petition. Art. 101, § 57; *Hoffman,* 232 Md. at 55, 191 A.2d at 578. It is simply incorrect to conclude that the escrow account remains empty until one reaches "the final weeks of compensation."[7] As we said in *Hoffman,* 232 Md. at 56, 191 A.2d at 578:

"Appellee is estopped from claiming there is no fund from which the lien can be satisfied. The lien of the fee attached at the time of the Commission's original order...."

And later,

"We hold that the lien was still in effect and that appellee is deemed to be holding in escrow the amount of [attor-

---

7. The Court of Special Appeals places much emphasis on the Commission's statement in its order of February 7, 1985 that legal fees are "to be paid from the final weeks of compensation due in this case." The court is correct that the "Commission has decided that the claimant is to be paid first and the attorney last...." 66 Md.App. at 396 n. 5, 504 A.2d at 656 n. 5. However, the court is incorrect in further concluding that funds need not be placed in escrow for the attorney until after the claimant is paid. Such a result ignores the clear requirement of Rule 21F that compensation benefits must be placed in escrow at the time the attorney files his fee petition.

ney's] fee. Appellee instituted the appeal and it can not be allowed to say now that by being successful in reducing the award, [the attorney's] fee is extinguished when the lien was in effect all along."

*Id.* at 56–7, 191 A.2d at 578.

More fundamentally, the intermediate appellate court's approach would encourage those in appellees' position to postpone establishing an escrow account, and placing compensation funds therein, until after an appeal of the claimant's award had been decided. If the award is subsequently reduced, resulting in an overpayment, the appellees would then be relieved of any obligation to establish an escrow account, to recognize the existence of the attorney's lien, and to comply with the Commission's attorney fee orders. This would afford no protection for attorneys who represent claimants in Workmen's Compensation cases, and thus undermine the effectiveness and purpose of section 57 and Rule 21F.[8]

Nothing we have said today is inconsistent with our holding in *Feissner v. Prince George's County,* 282 Md. 413, 384 A.2d 742 (1978). In that case, the liability of the insurer and the employer (Prince George's County) for claimant's disability award was *simultaneously* discharged under an offset provision in the law, see Md.Code (1957, 1985 Repl.Vol.), Art. 101, § 33, when the claimant received superior benefits from a county government pension plan. This event occurred before the claimant's attorney had filed his fee petition and the Commission had passed its order approving any legal fees. When the fee petitions were subsequently approved, liability had already been discharged and no fund was in existence onto which the attorney's lien could attach. By contrast, in the instant

---

**8.** The Court of Special Appeals noted: "We are aware that insurers, including self-insurers, usually pay the attorney's fee immediately upon approval." 66 Md.App. at 395 n. 4, 504 A.2d at 656 n. 4. However, under that court's approach, there would never be any incentive for insurers to take such action.

case, as in *Hoffman,* the appellees' liability for compensation benefits was not discharged. The attorney's lien subsequently did attach to a portion thereof, obligating the appellees to pay claimant's attorney.

## V

To reiterate, we hold that appellees must pay the claimant's attorney the sum of $3,255.00. The appellees are estopped from denying the existence of the attorney's lien because, by the operation of law, they overpaid the claimant. That appellees "were no longer obligated to pay anything to the claimant" does not mean that they were discharged from recognizing the lien on the funds held in escrow for the attorney.

In light of our holding in favor of claimant's attorney, we do not reach his alternative argument that appellees' appeal to the circuit court was untimely. Accordingly, we do not intimate any view as to the correctness of the Court of Special Appeals' reasoning on this issue.

JUDGMENT OF COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY.

COSTS TO BE PAID BY APPELLEES.