685 A.2d 1216

**Patricia WRIGHT**

v.

**PHILIP ELECTRONICS NORTH AMERICA, et al.**

**No. 1798, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Dec. 6, 1996.

Robert J. Zarbin (Donald S. Saiontz and Saiontz & Kirk, P.A., on the brief), Baltimore, for Appellant.

Craig T. Walsworth (Campen & Walsworth, P.A., on the brief), Easton, for Appellees.

Argued before MURPHY, C.J., and FISCHER and DAVIS, JJ.

FISCHER, Judge.

Patricia Wright (Wright) appeals from an order by the Circuit Court for Dorchester County that affirmed the findings of the Maryland Workers' Compensation Commission (the Commission) concerning Wright's claim for workers' compensation under the Maryland Workers' Compensation Act (the Act). Originally, the Commission found that Wright had sustained a permanent partial disability of 50% and was entitled to benefits of $178 per week for 333 weeks beginning September 18, 1991, the date Wright injured her leg while at work. Philip Electronics North America, Wright's employer, and Travelers Indemnity Company of Illinois, Philip's insurance carrier, filed an appeal in the circuit court, where a jury found that Wright had sustained a permanent partial disability of only 40%. The circuit court remanded the case to the Commission to recompute Wright's compensation benefits.

On remand, the Commission determined that Wright was entitled to $144 in permanent partial disability benefits for 200 weeks, subject to a credit for the amount of compensation already paid by appellees. Wright appealed to the circuit court, where both sides presented motions for summary judgment. On September 22, 1995, the circuit court granted appellees' motion for summary judgment and affirmed the Commission's ruling on the credit issue. Following the circuit court's decision, Wright filed this timely appeal.

On appeal, Wright presents the following question for our review, which has been condensed and reworded as follows:

Did the circuit court err when it found that appellees were entitled to a credit for the total amount of previous disability benefits paid instead of a credit for the total number of weeks of disability benefits paid? [1]

## FACTS

On February 7, 1990, Wright, while employed by Philip, injured her left knee loading a truck at work. The injured knee eventually required surgery. During the course of Wright's failed rehabilitation efforts preceding surgery, she developed a psychological condition.[2]

On November 19, 1992, the Commission conducted a hearing to determine the amount of compensation due Wright. On November 30, 1992, the Commission, in a written decision, found that Wright had been temporarily totally disabled, for which she had collected twenty-nine payments of $172 ($4,988) from appellees, and that Wright had sustained a permanent partial disability of 50% under Md.Code, Lab. & Empl. art. § 9–627(k) for her injured knee and psychological condition. The Commission, pursuant to sections 9–627(k) and 9–630, calculated Wright's benefits as $178 per week for 333 weeks.

Appellees appealed to the circuit court. On November 23, 1993, a jury found that Wright had sustained a 40% permanent partial disability. On remand to the Commission to

---

1. In her brief, Wright included a second issue worded as follows, "Did the circuit court err when it granted Summary Judgment in favor of appellees when it improperly applied the applicable law?" Wright argued that appellees did not respond to her motion for summary judgment and therefore, pursuant to Rule 2–501, she should have prevailed. It is enough to say that appellees' own motion for summary judgment satisfied the filing requirement. Additionally, the substantive elements raised by Wright's second claim are addressed in the course of our opinion, *infra.*

2. The Record is unclear concerning the specifics of Wright's psychological condition except that it was stress related and covered under the Act.

recalculate Wright's benefits, the Commission found that Wright was entitled to $144 per week for 200 weeks. Additionally, the Commission gave appellees credit for the total amount of benefits they had paid to Wright previously and applied that amount against the new compensation order. Wright appealed the Commission's credit finding to the circuit court, which affirmed the Commission.

Subsequent to the filing of our opinion in this case, *Wright v. Philip Electronics,* —— Md. App. —— (No. 1798, September Term, 1995, filed September 25, 1996), Wright moved this Court to reconsider its opinion. The primary contention of the motion was that, as written, the opinion failed to make clear that appellees were entitled to a dollar credit for the 29 weekly advances, each for the amount of $172.00, made voluntarily by the insurer. Accordingly, we have revised footnote 3 to clarify this point. In addition, Wright expressed concern that in our discussion of appellees' reliance upon the Subsequent Injury Fund, in particular LE § 9–804, to support their "dollar credit" position, we may cause some confusion as to our holding in this case. While we doubt that any misinterpretation would occur, we have deleted a portion of that discussion, as suggested by appellant. We, therefore, grant the motion for reconsideration, withdraw our September 25 opinion prior to publication, and issue this revised opinion in its place.

## DISCUSSION

This case involves the manner in which appellees' previous payments of temporary total disability and permanent partial disability benefits to Wright should be credited against their obligation to pay Wright $144 per week for 200 weeks. Wright advocates that the credit should be applied under a "weeks paid" scheme. Under Wright's approach, appellees would receive credit for the total number of weeks for which

they paid disability benefits to Wright.[3] Appellees, on the other hand, advocate a "dollar credit" approach that awards credit for the total amount of money paid.[4]

## I. THE ACT

Under the Act, the duration of disability compensation and the amount of that compensation are statutorily determined and based on a weekly disbursement schedule.[5] Section 9–627 defines the length of compensation made under the Act for permanent partial disabilities. Sub-sections 9–627(a)–(j) list various categories of injuries and designate each injury with the appropriate length of compensation in weeks. *E.g.*, Md. Code, LE § 9–627(d)(1)(ii) (stating that a loss of one's hand equates to 250 weeks of compensation). Sub-section 9–627(k), known as the "other cases" sub-section, states:

(1) In all cases of permanent partial disability not listed in subsections (a) through (j) of this section, the Commission shall determine the percentage by which the industrial use of the covered employee's body was impaired as a result of the accidental personal injury or occupational disease.

---

**3.** The following table explains how the "weekly credit" approach operates:
 [# of weeks of compensation to be paid] –
 [# of weeks of benefits paid prior to the final order]
 = number of weeks compensation should continue.
 [200 weeks] –
 118 weeks permanent partial disability benefits =
 82 weeks of payments due.
 [This amount is subject to a dollar credit for monies advanced to the appellant while she was awaiting her permanent partial disability hearing (29 weeks × $172.00 per week)].

**4.** The following table explains how the "dollar credit" approach operates:
 [$ value of compensation due] – [$ value of benefits paid]
 = the dollar amount of compensation due

**5.** Apparently, insurance companies usually pay these benefits on a biweekly schedule. Richard P. Gilbert and Robert L. Humphreys, Jr., *Maryland Workers' Compensation Handbook* § 7.13 (2d ed. 1993, 1996 Cum Supp.). The Commission, however, apparently has never found fault with this practice. *Id.*, at n. 101.

. . . .

(3) The Commission shall award compensation to the covered employee in the proportion that the determined loss bears to 500 weeks.

Md.Code, LE § 9–627(k). For example, in this case the Commission calculated the figure of 200 weeks of compensation by multiplying the baseline number, 500 weeks, by the percentage of the disability, 40%.

Section 9–629 outlines the amount of compensation due a claimant with a permanent partial disability and whose compensation, calculated pursuant to section 9–627, is between a period equal to or greater than 75 weeks but less than 250 weeks.[6] Section 9–629 provides that

the employer or its insurer shall pay the covered employee weekly compensation that equals two-thirds of the average weekly wage of the covered employee but does not exceed one-third of the State average weekly wage.

Md.Code, LE § 9–629.

## II. THE ODYSSEY

 Before embarking on our interpretative odyssey through the realm of the Act, we must establish certain principles that will guide our legal journey. The Court of Appeals has expressly stated that the Act "as a whole, 'should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes.' " *Para v. Richards Group,* 339 Md. 241, 251, 661 A.2d 737 (1995) (quoting *Howard Co. Ass'n for Retard. Cit. v. Walls,* 288 Md. 526, 530, 418 A.2d 1210 (1980)); *accord Lovellette v. Mayor and City Council of Baltimore,* 297 Md. 271, 282, 465 A.2d 1141 (1983). This bias for employees does not, *ipso facto,* mean that every case needs to be determined in

---

**6.** The Act establishes three tiers of compensation for permanent partial disabilities. These three tiers are as follows: (1) less than 75 weeks, Md.Code, LE § 9–628; (2) a period equal to or greater than 75 weeks but less than 250 weeks, Md.Code, LE § 9–629; and (3) 250 weeks or more, Md.Code, LE § 9–630.

favor of the employees. *See, e.g., Morris v. Board of Education,* 339 Md. 374, 384, 663 A.2d 578 (1995) (stating that construing the Act liberally in favor of employees "does not mandate the payment of benefits beyond that authorized by the Act's provisions and purposes"). It does mean, however, that when ambiguities arise in interpreting the Act, courts should side with the employees unless persuasive reasons exist to the contrary. *See Lovellette,* 297 Md. at 282, 465 A.2d 1141.

One of the Act's "benevolent purposes" is to provide "day to day support to injured employees," *Bayshore Indus., Inc. v. Ziats,* 229 Md. 69, 77, 181 A.2d 652 (1962). *See also Victor v. Proctor & Gamble,* 318 Md. 624, 630, 569 A.2d 697 (1990) (quoting *Beth.-Sparrows Point Shipyard v. Damasiewicz,* 187 Md. 474, 480, 50 A.2d 799 (1947)) (stating that the purpose of the Act is to compensate "for loss of earning capacity") (emphasis omitted).[7] The compensatory nature of the disability benefits covered by the Act serves as one of its defining characteristics. *See* Md.Code, LE § 9–101(e). Workers' Compensation benefits, therefore, are paid out on a weekly disbursement schedule to reflect their compensatory nature, as opposed to a lump sum civil judgment. Richard P. Gilbert and Robert L. Humphreys, Jr., *Maryland Workers' Compensation Handbook* §§ 2.1, at 17.13 & 18 (2d ed. 1993, 1996 Cum.Supp.)

With these guidelines in mind, we now embark on our quest to determine which credit approach is consistent with the structure and policies of the Act.

## A.

■ The "weekly credit" approach is consistent with the Act's benefit structure. It follows naturally that if the com-

---

**7.** Section 9–729 allows the Commission to award compensation benefits in one lump sum. Md.Code, LE § 9–729. Lump sum payments, however, are the exception and are only used when special circumstances exist. Some valid reasons that justify the granting of a lump sum payment include, but are not limited to, "copies of overdue mortgage notices, utility, or installment loan payments...." Gilbert, *supra,* § 7.13, at 159.

pensation structure is expressed in terms of "weeks," then any credit for previous payments should also be expressed by "weeks." Only by using this method is it possible to ensure that credit given for previous payments is consistent with the Act's policies and structure.

Both parties are correct in observing that neither this Court nor the Court of Appeals has previously discussed the issue in the statutory context of the case *sub judice.* The Court of Appeals and this Court, however, have had the opportunity to address the issue of credit for previous payments in other contexts of the Act. In those instances the courts applied the "weekly credit" approach.

In *Stapleford v. Hyatt,* 330 Md. 388, 402, 624 A.2d 526 (1993), the Court of Appeals addressed whether the Commission correctly credited an employer for compensation payments made prior to the reopening of the employee's case because the employee's condition worsened. After examining analogous case law that discussed credit for previous payments, the Court of Appeals held that

> the calculation of the "serious disability" benefits due a claimant after the worsening of condition has been determined on a reopening of his or her claim should be as follows. The number of weeks of compensation paid and payable under the revised disability assessment should be augmented by one-third, *that number of weeks should be reduced by the weeks of compensation actually paid by the claimant under previous order of the Commission,* and the balance of weeks of compensation should be awarded to the claimant at the "serious disability" rate.

*Stapleford,* 330 Md. at 402, 624 A.2d 526 (emphasis added). Similarly, this Court has used the "weekly credit" approach in other cases discussing the re-opening of workers' compensation cases because of worsening conditions. *E.g., Schindele v. Nu–Car Carriers, Inc.,* 42 Md.App. 705, 402 A.2d 1307 (1979); *Gordon v. Baltimore Spice Company,* 17 Md.App. 300, 301 A.2d 41, *cert. denied,* 269 Md. 755 (1973); *see also* 1C Arthur Larson, *Larson's Workmen's Compensation Law* § 57.47

(1996, May 1996 Cum.Supp.) (stating that a credit for wage payments made previous to a compensation award should be credited based on the number of weeks in which compensation was paid).[8]

Appellees attack the "weekly credit" approach by arguing that it unjustly enriches Wright by providing her with more money than the Commission's final compensation order. Appellees' argument, however, ignores the Act's compensatory purpose.

This Court recognizes that the "weekly credit" approach could be viewed as illogical in that it may compensate employees slightly more than a revised compensation order. This Court and the Court of Appeals, however, have learned to live with these sometimes illogical results as long as the policies of the Act are simultaneously carried out. *See Subsequent Injury Fund v. Teneyck,* 317 Md. 626, 636 n. 6, 566 A.2d 94 (1989). As Gilbert and Humphreys observe:

> The authors are cognizant the statutory scheme has some "cracks" through which claimants may fall, resulting in low or higher awards than may have been contemplated by the legislature. As long as the statutory plan is observed, however, the spirit and intent of the Act are fulfilled.

Gilbert, *supra,* § 2.1, at 18 n. 1. Simply put, our duty is to "construe the [Workers' Compensation] Act, not to revise it," *Bata Shoe Co. v. Chvojan,* 188 Md. 153, 159, 52 A.2d 105 (1947).

In this case, the policy and "spirit" of the Act are carried out by the application of the "weekly credit" approach. The logic of applying the "weekly credit" approach becomes even

---

**8.** In their brief, appellees insist that our opinion in *Norris v. United Cerebral Palsy,* 86 Md.App. 508, 587 A.2d 557 (1991) supports a "dollar credit" approach. Specifically, appellees point to our statement that an employee is entitled to "credit for compensation paid" as support for their position. *Norris,* 86 Md.App. at 514, 587 A.2d 557 (quoting *Maizel v. Maizel & Shapiro Enters.,* 25 Md.App. 1, 6, 332 A.2d 261 (1975)). This argument, however, is without merit. It is enough to say that this Court and the Court of Appeals have interpreted "credit for compensation paid" in terms of weeks and not in terms of dollars.

more clear when it is compared directly with appellees' "dollar credit" approach.

### B.

The "dollar credit" is inapposite to the workings of the Act. It operates from a starting premise that compensation benefits are *fixed awards of money,* i.e. civil judgments, and not compensation payments intended to be paid out over the course of the calculated benefits period. The "dollar credit" approach does not accurately fit into the Act's weekly benefits structure. Accordingly, when applied, the "dollar credit" approach results in benefit amounts that are inconsistent with existing laws and policies.

■ The Commission's award of compensation benefits is a legal promise enforceable by law, i.e. a contract. *Cooper v. Wicomico,* 278 Md. 596, 599–600, 366 A.2d 55 (1976); *see also State Industrial Commission v. Nordenholt Corp.,* 259 U.S. 263, 271, 42 S.Ct. 473, 473–74, 66 L.Ed. 933 (1922) (discussing an employer's duty to pay workers' compensation benefits in terms of a contractual obligation). Thus, under a workers' compensation award, the employer is legally obligated to pay the employee a certain amount of compensation over a fixed period of weeks.

A "dollar credit" approach, however, changes the terms of the contract by retroactively shortening the length of time that a claimant will receive compensation. The shortening of the contractual compensation benefits period punishes employees, runs afoul of the Act's primary purpose in providing for day to day expenses, and breaches the employer's contractual obligation.

In this case, the contract between Wright and appellees was for 200 payments of $144. This is different than contracting to pay $28,880. Appellees' attempts to equate one with the other allows them to avoid a contractual obligation. The practical effect of this result would leave Wright with a fifty-three week period during which she would receive no compensation.

This sort of retroactive accounting and contractual manipulation is not permitted under the Act. *See St. Paul Fire & Marine Ins. Co. v. Treadwell,* 263 Md. 430, 283 A.2d 601 (1971) (stating that under the Act an employer cannot recover back money already paid to an employee). The "dollar credit" approach operates as a subtle form of this forbidden practice. The "dollar credit" approach monetarily negates previous payments by retroactively cutting short the length of the benefits award, thereby taking money out of the hands of claimants. Proceeds of this practice materialize in the savings an employer gains by not having to pay additional weeks of compensation.

## III.

Appellees argue, in a rather agglutinative style, that one Maryland case, *Joy M. Renehan Staley v. Board of Education of Washington County,* 308 Md. 42, 517 A.2d 349 (1986), and one section of the Act, section 9–804, support the application of a "dollar credit" system. Upon closer examination, however, these two alleged indicia of a "dollar credit" system fail to support appellees' position.

In *Staley,* the employer paid an employee benefits pursuant to the Commission's compensation order. After the circuit court reduced this award on appeal, it became clear that the employer had already fulfilled its benefits obligation and had actually overpaid by $9,375.68. *Id.* at 44, 517 A.2d 349. The issue presented to the Court of Appeals was whether the employer had to pay the employee's legal fees or whether those fees could be taken out of the overpayment.

Appellees insist that the Court of Appeals in *Staley* adopted a "dollar credit" approach and that we should follow suit. Relying on *Staley* to support a "dollar credit" for disability benefits, however, is the legal equivalent of comparing apples and oranges. The Court of Appeals analyzed *Staley* in terms of the total amount of the overpayment, as opposed to the number of weeks the overpayment constituted, because of the way the Act establishes the payment of attorneys' fees.

Under the Act, once a claimant obtains a compensation award, an attorney can file a petition to have his fees taken out of the money due the claimant and placed into an escrow account. *Id.* at 47–48, 517 A.2d 349; *Hoffman v. Liberty Mutual Insurance Company,* 232 Md. 51, 55, 191 A.2d 575 (1963). Once the petition is approved, a lien attaches to the funds held in escrow. *Staley,* 308 Md. at 47–48, 517 A.2d 349. In *Staley,* the Court of Appeals held that the employer had to pay the attorneys' fees and could not rely on the overpayment to offset the obligation to pay attorneys' fees. *Id.* at 53, 517 A.2d 349.

In *Staley,* even if the Court of Appeals had allowed the employer to credit an overpayment against an outstanding obligation to pay attorneys' fees, it would have been impossible to apply a "weekly credit" approach. Attorneys' fees are not disbursed or calculated by using a weekly scale of disbursement. They are held in escrow and taken directly out of the amount of compensation benefits. Thus, the Court of Appeals's discussion of the overpayment in *Staley* lends no support to the application of a "dollar credit" approach to this case.

Next, appellees turn to the Subsequent Injury Fund, a section of the Act, to support their "dollar credit" position.[9] Appellees maintain that section 9–804 supports their position because it demands that

[w]hen the Commission makes an award against the Subsequent Injury Fund, if the prior permanent disability contributes to the covered employee's current permanent disability, the Commission shall deduct from the award the amount of all prior permanent payments awarded to the covered employee. . . .

9. The Subsequent Injury Fund protects employers who hire persons with pre-existing disabilities. *Subsequent Injury Fund v. Teneyck,* 317 Md. 626, 632, 566 A.2d 94 (1989). If an employee with a pre-existing disability is injured in the work place, the employer only has to pay benefits for the disability that is a result of the subsequent injury. *Id.;* Md.Code, LE § 9–802. The Fund covers the balance of the award.

Md.Code, LE § 9–804(b). This sub-section, however, has nothing to do with credit for previous payments applied to an existing duty to pay disability benefits.

Merely pointing out that one sub-section of the Act deducts the total amount of previous payments from the present amount of a benefits award does not, *ipso facto,* mean that the same approach applies to the entire statute. Such an argument ignores the policy goals of the Act's benefits section.

Section 9–804's dollar deduction clause operates to ensure that claimants are not doubly compensated for injuries for which they have already been compensated. *See Gray v. Subsequent Injury Fund,* 71 Md.App. 656, 659, 527 A.2d 54 (1987) (noting that the Legislature wanted to ensure that employees did not receive compensation twice for the same injury).

For the aforegoing reasons, the decision of the circuit court must be reversed.

**JUDGMENT REVERSED.**

**CASE REMANDED TO THE CIRCUIT COURT FOR DORCHESTER COUNTY WITH INSTRUCTIONS TO REMAND THE CASE TO THE WORKERS' COMPENSATION COMMISSION IN ORDER TO RECALCULATE THE AMOUNT OF COMPENSATION STILL OWED BY APPELLEES.**

**APPELLEES TO PAY COSTS.**