17975

Mrs. Jessie BRITTLE, Widow, Claimant, Respondent, v. RAYBES-TOS-MANHATTAN, INC., and United States Casualty Company, Appellants.

(127 S. E. (2d) 884)

*Messrs. Mitchell & Horlbeck* and *Sinkler, Gibbs & Simons* of Charleston, *for Appellants,*

*Paul N. Uricchio, Jr., Esq.,* of Charleston, *for Respondent,*

*Messrs. Mitchell & Horlbeck* and *Sinkler, Gibbs & Simons,* of Charleston, *for Appellants, in Reply,*

October 22, 1962.

TAYLOR, Chief Justice.

This is a Workmen's Compensation case.

Respondent claims as next of kin of George Brittle, deceased, against Raybestos-Manhattan, Inc., benefits allegedly due under the South Carolina Workmen's Compensation Act for his death from an occupational disease, contracted in the course of the employment of the deceased with that company. The Industrial Commission made an award in favor of Respondent. On appeal therefrom to the Circuit Court, it was affirmed in all material respects. This appeal is by the employer and insurance carrier from the Order of the Circuit Court.

The deceased was employed continuously by Raybestos-Manhattan, Inc., from September 1, 1922 to March 2, 1951,

at which time he ceased to work because of illness. He died on December 24, 1956, at the age of 63.

Shortly after deceased quit work, the employer began making voluntary payments to him. From April 19, 1951, to July 1, 1951, these voluntary payments were in the amount of $200.00 per week, and beginning July 2, 1951, until his death he was paid the sum of $100.00 per month, amounting in the aggregate to $6,820.00. It is agreed that the maximum recovery in this case, because of the date of death and the statutory limit then in effect, is $6,000.00. The claim for credit against the award herein for the amounts voluntarily paid to the deceased prior to his death presents the first question for determination in this appeal. Such credit is claimed under the provisions of Section 72-172, Code of Laws of South Carolina, 1952, which is as follows:

"Any payments made by an employer to an injured employee during the period of his disability, or to his dependents, which by the terms of this Title were not due and payable when made may, subject to the approval of the Commission, be deducted from the amount to be paid as compensation; provided, that in the case of disability such deductions shall be made by shortening the period during which compensation must be paid and not by reducing the amount of the weekly payment."

The claim for a deduction or offset against the award for the amount paid to the deceased during his lifetime was denied by the Industrial Commission. The approval of the Commission for such deduction is required by the foregoing section, and its conclusions thereabout are binding on appeal unless there is an absence of competent evidence to support them.

The payments contemplated by the foregoing section, for which credit may be allowed, are those made by the employer to the employee for disability, which by the terms of the Workmen's Compensation Act were not due and payable when made. The payments to be deductible must have

been made, therefore with reference to liability under the provisions of the Act and intended to be in lieu of compensation. Larson's Workmen's Compensation Law, Vol. 2, p. 18, Section 57.40.

Since only those payments are deductible which are made in contemplation of the legal obligation of the employer to pay compensation to a disabled employee, the intent with which such payments are made becomes important. Indicative of that intent is the amount of the weekly payments made. The average weekly wages of the deceased was $56.43, making the compensable rate at the time the sum of $25.00 per week. The weekly payments made by the Appellant to the deceased during his lifetime, and for which credit is sought against the present award, were, therefore, less than the compensation to which the employee would have been entitled had liability been accepted under the act.

In those cases where credit is allowed for voluntary payments made by the employer to the employee, the rule is that the amount of credit is not the amount of wages paid, but the amount of compensation due for the particular week. See: *Poole v. E. I. DuPont De Nemours & Co.*, 227 S. C. 232, 87 S. E. (2d) 640; *Annen v. Standard Oil Co. of New Jersey*, (La. App.) 28 So. (2d) 46; *Elliott v. Gooch Feed Mill Co.*, 147 Neb. 612, 24 N. W. (2d) 561; *Mercury Aviation Co. v. Industrial Acc. Commission of California*, 186 Cal. 375, 199 P. 508; *Vanino v. Textile Machine Works*, 183 Pa. Super. 181, 130 A. (2d) 203. Therefore, the fact that the voluntary payments made by the Appellant were less than the amount of compensation which would have been due is strong evidence that such payments were made gratuitously and without reference to the provisions of the Workmen's Compensation Act.

The rule in such cases, supported by reason and the authorities, is thus stated in Larson's Workmen's Compensation Law, Vol. 2, p. 24, Section 57.47:

"The amount of the credit is not the amount of wages paid, but the amount of compensation due for the particular

week. Thus, if the wage paid was $30.00, and if the compensation due for the week was $20.00, the credit is for $20.00 only. In other words, the credit is for the week, not for a number of dollars, and the excess cannot be carried over as a credit against other weeks of liability.

"The credit rule has been applied only when the wages paid were at least equal to the compensation that was due for the week. This can be easily defended under the intention rule, since the employer cannot be ascribed an intention to make certain payments in lieu of compensation when the payments are too small to be compensation benefits."

Further review of the facts in this regard is unnecessary. The fact that the payments made were less than the compensable rate affords ample evidentiary basis for the disallowance of the deductions claimed in this case.

Appellant also contends error on the part of the Industrial Commission in disregarding the medical report and findings of the Medical Board, appointed on motion of the Appellant pursuant to Section 72-261 *et seq.* of the 1952 Code of Laws.

Section 72-261 is as follows:

"The procedure for determining claims for benefits from an occupational disease shall be the same as that followed in determining other claims under this Title, save that if any medical question shall be in controversy the Commission may, upon its own motion, and shall, upon motion of either party to the proceeding, refer the question to the medical board as provided in this chapter for investigation and report. A medical question shall be deemed to include any issue concerning the existence, cause and duration of a disease or disability, the date of disablement, the degree of disability and the proportion thereof attributable to a noncompensable cause and any other matter necessarily pertinent thereto requiring the opinion of experts."

Section 72-265 relates to the consideration to be given to a report of the Medical Board to which a medical question

has been referred under the provisions of Section 72-261, and is as follows:

"The decisions and award in the case shall conform to the findings and conclusions in such report in so far as restricted to medical questions, save that either party may, within ten days after receipt of a copy of the report, file written objection thereto with the Commission which shall remand the matter to the same or another board if it be proven that the conclusion of the board upon a medical question be manifestly erroneous or unreasonable or due to fraud, undue influence, inadvertence or mistake of law or fact."

A Medical Board was convened in this case for the sole purpose of determining the cause of death of the deceased. This Board determined that the employee died as a result of two diseases, namely: Pulmonary Asbestosis of long standing and Pulmonary Cancer of an estimated duration of 1½ years, Pulmonary Asbestosis being 85% responsible for his death and Pulmonary Cancer 15% responsible therefor. Neither party filed any objections to the report of the Medical Board.

Thereafter, the Commission filed its award in which it found "that the employee-claimant, George Brittle, did contract a pulmonary disease as a direct result of and arising out of his employment with the defendant company prior to March 2, 1951, as a result of which caused his death on December 24, 1956." Award was then made for the full amount allowed by statute on the basis of the death of the deceased from a compensable disease. It is the contention of Appellant that the foregoing action of the Commission ignored the decision of the Medical Board, which it contends is binding in this case since no exception was filed thereto, and failed to reduce the amount of the award by the percentage which pulmonary cancer was determined to have contributed to the employee's death, as required by Section 72-258 of the 1952 Code of Laws.

Section 72-258 provides:

"When an occupational disease prolongs, accelerates or aggravates or is prolonged, accelerated or aggravated by any other cause or infirmity not otherwise compensable, the compensation payable for disability or death shall be limited to the disability which would have resulted solely from the occupational disease if there were no other such cause or infirmity and shall be computed by the proportion which the disability from occupational disease bears to the entire disability."

The extent to which the Industrial Commission is bound by the findings of the Medical Board need not be considered, for no findings were made by the Board touching the fundamental issue before the Commission. While the Board concluded that Pulmonary Cancer was 15% responsible for the employee's death, no finding was made as to the extent which such disease may have affected the disability of the employee.

It is undisputed in this case that the employee was totally disabled from the occupational disease of asbestosis. The amount of compensation payable under Section 72-258 for either "disability or death" is "limited to the disability which would have resulted from the occupational disease if there were no other such cause or infirmity and shall be computed by the proportion which the disability from occupational disease bears to the entire disability." Therefore, the factor determining the amount of death benefits, where death is caused by an occupational disease and a noncompensable infirmity, is the relation or proportion which the disability from occupational disease bears to the entire disability, and not the proportion which such occupational disease bears to the cause of death.

Appellant contends, however, that Section 72-258 should be read as meaning that, in cases where death is caused in part by an occupational disease, and in part by a noncompensable infirmity, compensation "shall be computed by the proportion which the disability or cause of death from occu-

pational disease bears to the entire disability or death." To so construe the statute would require this Court to write into its provisions conditions which the Legislature has not seen fit to do. The language of the foregoing statute is clear, unambiguous and in accord with the underyling principal governing the determination of questions relating to compensability in occupational disease cases, that is the fact and degree of disability from such disease. See: *Drake v. Ray-bestos-Manhattan, Inc. et al.,* S. C., 127 S. E. (2d) 288, filed September 5, 1962. No inconsistency appears between the award of the Commission and the findings of the Medical Board.

For the foregoing reasons we are of opinion that the Order appealed from should be affirmed and it is so ordered.

Affirmed.

Moss, Lewis and Brailsford, JJ., and T. B. Greneker, Acting J., concur.

Bussey, J., not participating.