727 A.2d 437

AMETEK, INC., et al.

v.

Susan O'CONNOR.

No. 906, Sept. Term, 1996.

Court of Special Appeals of Maryland.

April 12, 1999.

W. John Vernon (Lord & Whip, P.A., on the brief), Baltimore, for appellants.

Gerald F. Gay (Herbert J. Arnold and Arnold & Gay, P.A., on the brief), Baltimore, for appellee.

Argued before HOLLANDER, SALMON and SONNER, JJ.

HOLLANDER, Judge.

In this Workers' Compensation Act case, we must determine how to calculate the credit due to an employer/insurer for benefits paid to a claimant prior to an increase in the claimant's award that resulted from judicial review. The claimant urges that the credit must be commensurate with the total monetary benefits actually paid, while the employer/insurer contends that the credit must be based on the actual number of weeks for which benefits were paid. In real terms, $2,650.00 is at stake.

Susan O'Connor (the "Claimant"), appellee, filed a claim against her employer, Ametek, Inc., and its insurer, Home Indemnity Company, appellants, to recover workers' compensation benefits, pursuant to the Workers' Compensation Act (the "Act"), Maryland Code (1991 Repl.Vol., 1997 Supp.), Title 9 of the Labor and Employment Article ("L.E."). Initially, the Workers' Compensation Commission (the "Commission") found that O'Connor had sustained a permanent partial disability of 10% of her body as a whole. Accordingly, the Commission determined that the Claimant was entitled to benefits of $81.00 per week for 50 weeks. After a jury found that appellee had sustained a permanent partial disability of 70% of the body as a whole, the Commission determined that the Claimant was entitled to disability benefits of $134.00 per week for 467 weeks.

Thereafter, Ametek and Home Indemnity Company (collectively, "Ametek" or the "Employer") filed a motion for reconsideration, seeking a credit for the 50 weeks of compensation benefits that were paid to the Claimant prior to the increase in her award. The Commission ultimately agreed to reduce the Employer's obligation of 467 weeks of benefits by the 50 weeks for which benefits had already been paid. Accordingly, the Commission issued an amended order directing the Employer to pay O'Connor disability benefits of $134 per week for 417 weeks, rather than 467 weeks. The circuit court reversed

the Commission's decision. It ordered appellants to pay the Claimant permanent partial disability benefits of $134.00 for 467 weeks, less a credit of $4,050.00. The credit reflected the Employer's payment of benefits of $81.00 per week for 50 weeks.

Appellants timely noted this appeal and present one question for our review, which we have rephrased slightly:

When an award of compensation is increased following an appeal from a decision of the Workers' Compensation Commission, is the employer/insurer entitled to a credit for benefits previously paid based on the number of weeks for which benefits were paid or, alternatively, based on the monetary amount of benefits actually paid?

We conclude that, when an award to a claimant is increased pursuant to a petition for judicial review, the employer/insurer is entitled to a credit for the total amount of money actually paid to the claimant prior to the increase in the award. Accordingly, we shall affirm the trial court's decision.

### Factual Summary [1]

In 1973, the Claimant began working for Ametek as a tapered bristle inspector operator. On March 24, 1980, while appellant was performing the duties of her employment, she was injured.

On March 29, 1980, O'Connor filed a claim under the Act. In April 1981, it was determined that she had sustained an occupational injury arising out of her employment and that appellants were liable for her medical expenses. On August 7, 1995, the Commission conducted a hearing to determine the amount of compensation to which O'Connor was entitled under the Act in regard to her claim of a permanent partial disability. On August 16, 1995, the Commission found that O'Connor had sustained a permanent partial disability of 10% of her body as a whole and that she was entitled to benefits of $81.00

---

1. As the underlying facts are not in issue, we shall only recount them briefly.

per week for 50 weeks, commencing March 3, 1995. Pursuant to the Commission's order, the Employer paid those benefits to the Claimant.

Dissatisfied with the award, O'Connor sought judicial review in the circuit court. On August 29, 1996, a jury found that O'Connor had sustained a 70% permanent partial disability of her body as a whole. Accordingly, in a written order dated January 9, 1997, the Commission determined that the claimant was entitled to permanent partial disability benefits of $134.00 per week for 467 weeks. On January 16, 1997, the Employer filed a motion for rehearing, contending that it was entitled to a credit based on the number of weeks for which it had paid benefits to appellee, in accordance with the Commission's order of August 16, 1995.[2] Specifically, Ametek argued that "the credit for previous payments should be expressed in terms of *weeks,* not amounts, of compensation previously paid." The Employer also asked the Commission to "issue an order clarifying the credit issue. . . ."

On January 21, 1997, the Commission amended its Order of January 9, 1997, "to include that compensation awarded for permanent partial disability is subject to a credit for . . . payments made under the Order dated August 16, 1995." Ametek then asked the Commission to reconsider the order of January 21, 1997; it sought credit for the *weeks* of benefits paid, rather than the *amount* of benefits paid. The Commission granted the Employer's motion by order dated March 13, 1997. In that order, which "rescinded and annulled" the earlier order of January 21, 1997, the Commission ruled:

ORDERED that [the Commission's] Order dated January 21, 1997 is hereby rescinded and annulled, and further ORDERED that the above-named employer and above-named insurer [appellants] pay unto the . . . claimant com-

---

2. The motion was actually in the form of a letter from appellants' attorney to the Commission, advising that a dispute had arisen between the parties as to the credit for payments made under the previous order, and requesting the Commission to accept the letter as a Motion for Rehearing under L.E. § 9–726.

pensation for permanent partial disability at the rate of $134.00, payable weekly, for a period of 417 weeks. . . .

Accordingly, the Commission reduced by 50 weeks, from 467 to 417, the remaining number of weeks for which appellants had to pay benefits to the Claimant. As to the 50 weeks of payments for which the Employer received credit, appellee had actually recovered benefits of only $81.00 per week, amounting to a total of $4,050.00, rather than $134.00 per week. Thus, the effect of the order was to credit appellants with 50 weeks of payment as if paid at the rate of $134.00 per week (i.e., $6,700.00), rather than at the rate of $81.00 per week that appellee actually received.

After O'Connor challenged the Commission's decision in the circuit court, both sides filed cross-motions for summary judgment. At the motions hearing on March 24, 1998, the Claimant contended that the Commission improperly credited appellants with 50 weeks of benefits. She insisted that giving a weekly credit rather than a credit for the dollar amount resulted in the "claimant . . . [being] short-changed . . . because of an incorrect and erroneous decision of the Commission" in the first place.

The trial court agreed, stating, in part:

At issue here is whether the claimant should be compensated the difference between the $81 per week with which she was originally compensated by the Commission and $134 per week which was subsequently found to be the correct amount after the jury's verdict.

I do believe the [A]ct, as indicated in the Wright versus Phillips [sic] case, should be liberally construed in favor of the claimant. And I do appreciate and acknowledge the arguments of counsel with regard to comparison of the facts in Wright . . . as opposed to the facts here.

I do find that the claimant is being compensated at a rate of $134 per week for a period of 417 weeks and she was previously compensated 50 weeks at $81 per week. That 50–week period was adjusted by the Commission in reducing the award from 467 to 417 weeks. And I believe and

find that the claimant should be compensated for the difference. . . .

* * *

And the Court accordingly will reverse the decision of the Commission dated January 21, 1997, and find that the claimant is in fact entitled to be compensated for a period of 467 weeks at the rate of $134 per week.

## Discussion

■ This case presents the flip side of *Philip Electronics North America v. Wright,* 348 Md. 209, 703 A.2d 150 (1997). There, the Court considered the following question:

We must determine whether, after an award to a claimant is reduced pursuant to a petition for judicial review, the employer is entitled to a credit for the total amount of money paid to the claimant before the reduction of the original award, or whether the appropriate credit is the number of weeks the employer paid benefits prior to the reduction. We shall hold that a credit based upon the number of weeks the employer has paid benefits is proper.

*Id.* at 212, 703 A.2d 150. In its ruling, the *Philip Electronics* Court expressly reserved as to the precise issue presented here. The Court said, in a footnote:

Philip Electronics also argues at length that affirming the judgment of the Court of Special Appeals would be detrimental to claimants if the reasoning of the intermediate appellate court were applied to cases where an award is *increased* after the filing of a petition for judicial review, and the Commission must then determine whether to retroactively increase the award based on the number of weeks of benefits previously paid by the employer, or based on the total amount of monetary benefits previously received by the claimant. The issue is not presented in this case, and we express no opinion on that scenario.

*Id.* at 215 n. 4, 703 A.2d 150.

The Employer posits that the circuit court erred in crediting appellants based on the total *amount* of monetary benefits.

Relying on *Philip Electronics,* the Employer contends that it is entitled to a credit for the number of weeks for which benefits were paid before the increase in the compensation award. Ametek points to the Court's reasoning in *Philip Electronics,* in which the Court said: "The plain language of the Act leads us to conclude that the Legislature expressed a commitment to the payment of permanent partial disability benefits based on a weekly framework, rather than focusing upon the total monetary value of such an award." *Id.* at 221, 703 A.2d 150 (citations omitted).

The Claimant acknowledges that, in *Philip Electronics,* the Court concluded that "the General Assembly intended that an employer's credit for the payment of partial disability benefits be based upon the number of weeks of compensation previously paid, absent clear legislative expression to the contrary." *Id.* at 225, 703 A.2d 150. Nonetheless, appellee distinguishes *Philip Electronics* because the employer there sought to effectuate a credit against overpayment of benefits by terminating the payment of weekly benefits to recoup the overpayment. Moreover, she points out that the Court's ruling in *Philip Electronics* was consistent with the primary purpose of the Act, which is to protect workers and their families from hardships inflicted by work-related injuries. We agree with the Claimant.

If we were to accept appellants' argument, they would pay total benefits to O'Connor of $59,928.00, rather than the $62,578.00 to which she is clearly entitled, thereby depriving the Claimant of $2,650.00 in benefits. Such a result would contravene the purpose of the Act, as elucidated by the Court in *Philip Electronics,* 348 Md. at 226, 703 A.2d 150, and numerous other cases. We explain further.

 The Act is a remedial statute, and its provisions are liberally construed in favor of employees in order to realize the Act's benevolent purposes. *See Engel & Engel, P.A. v. Bruce Ingerman, et al.,* 353 Md. 43, 51, 724 A.2d 645 (1999); *Porter v. Bayliner Marine Corp.,* 349 Md. 609, 616, 709 A.2d 1205 (1998); *Para v. Richards Group of Washington Ltd.*

*Partnership,* 339 Md. 241, 251, 661 A.2d 737 (1995); *B. Frank Joy Co. v. Isaac,* 333 Md. 628, 634–35, 636 A.2d 1016 (1994); *Victor v. Proctor & Gamble Mfg. Co.,* 318 Md. 624, 628–29, 569 A.2d 697 (1990); *Jung v. Southland Corp.,* 114 Md.App. 541, 548, 691 A.2d 263 (1997), *aff'd,* 351 Md. 165, 717 A.2d 387 (1998); *Barnes v. Children's Hosp.,* 109 Md.App. 543, 553, 675 A.2d 558 (1996); *Lombardi v. Montgomery County,* 108 Md. App. 695, 703, 673 A.2d 762 (1996); *see also* L.E. § 9–102(a). As a consequence, any ambiguities in the Act must be resolved in favor of a claimant. *See Philip Electronics,* 348 Md. at 217, 703 A.2d 150; *Mayor and City Council of Baltimore v. Cassidy,* 338 Md. 88, 97, 656 A.2d 757 (1995); *Barnes,* 109 Md.App. at 554, 675 A.2d 558; *Lombardi,* 108 Md.App. at 703, 673 A.2d 762. Nevertheless, in construing the Act, we may not "stifle ... [its] plain meaning ... exceed its purposes ... [or] create ambiguity or uncertainty in [its] ... provisions where none exists so that a provision may be interpreted in favor of the ... claimant." *Philip Electronics,* 348 Md. at 217, 703 A.2d 150 (internal citation omitted); *see also Porter,* 349 Md. at 616–17, 709 A.2d 1205; *Morris v. Board of Educ. of Prince George's County,* 339 Md. 374, 384, 663 A.2d 578 (1995); *Jung,* 114 Md.App. at 548, 691 A.2d 263; *Lombardi,* 108 Md.App. at 703, 673 A.2d 762; *Tortuga, Inc. v. Wolfensberger,* 97 Md.App. 79, 83, 627 A.2d 56, *cert. denied,* 332 Md. 703, 632 A.2d 1209 (1993). Nor may we extend coverage "beyond that which is authorized by the provisions of the Act." *Barnes,* 109 Md.App. at 554, 675 A.2d 558 (citation omitted).

In *Philip Electronics,* the Commission found that the claimant had sustained a permanent partial disability of 50% and was entitled to benefits of $178.00 per week for 333 weeks. A jury later found that the claimant had only sustained a 40% permanent partial disability. *Philip Electronics,* 348 Md. at 213, 703 A.2d 150. As a result, the claimant's entitlement to benefits was reduced to $144.00 per week for 200 weeks. *Id.* By that time, however, the employer had already paid benefits to the claimant for 147 weeks, at the rate of $178.00 per week, totaling $32,772.00. *Id.* at 214, 703 A.2d 150. Consequently, the Commission gave the employer a credit for the total

amount of monetary payments it had made pursuant to the Commission's original order, and the claimant challenged that ruling.

In the Court of Appeals, the employer argued that, if it received a credit based on the number of weeks for which it had paid benefits, and it was obligated to pay benefits for another 53 weeks, "the end result would be payments totaling $39,600—or $10,800 more than the amount mandated by the jury verdict." *Id.* at 214–15, 703 A.2d 150 (footnote omitted). Consequently, the employer sought an "offset" of the monetary amount already paid against the amount still owed to the claimant. *Id.* at 215, 703 A.2d 150.

The Court observed that none of the provisions in the Act specifically addressed or permitted "an employer to offset payments made prior to the reduction of an award against subsequent, recalculated benefits[.]" *Id.* at 223, 703 A.2d 150. After applying settled principles of statutory construction, the Court determined that "the language of [L.E.] § 9–627(k), as well as the language of [L.E.] § 9–629 and [L.E.] § 9–630, clearly and unambiguously demonstrate a legislative commitment to the payment of permanent partial disability benefits within a weekly framework." *Id.* at 218, 703 A.2d 150. The Court reasoned:

> "The 'weekly credit' approach is consistent with the Act's benefit structure. It follows naturally that if the compensation structure is expressed in terms of 'weeks,' then any credit for previous payments should also be expressed by 'weeks.' "

*Id.* at 221, 703 A.2d 150 (quoting *Wright v. Philip Electronics North America,* 112 Md.App. 642, 649–50, 685 A.2d 1216 (1996)). Accordingly, the Court of Appeals rejected the employer's argument. It held

> that when a claimant's initial award by the Commission is reduced pursuant to a petition for judicial review, an employer shall be entitled to a credit for the number of weeks of benefits actually paid in accordance with the original

order, rather than a credit based upon the amount of money previously paid to the worker.

*Id.* at 225–26, 703 A.2d 150.

The Court noted that its holding "comport[ed] with several basic purposes served by the Act[,]" *id.* at 226, 703 A.2d 150, such as "protect[ing] workers and their families from hardships resulting from work-related injuries by providing compensation to workers for loss of earning capacity," *id.* (citations omitted), and "benefit[ting] the taxpayers of the State of Maryland in helping to prevent the State from having to assume the financial responsibility of caring for injured workers and their dependents." *Id.* (citations omitted). The *Philip Electronics* Court further reasoned that if the employer were given a credit based on the number of weeks, the claimant would continue to receive weekly payments of benefits "for the allotted number of weeks, albeit reduced to accurately reflect the degree of her injury as determined by a jury." *Id.* Conversely, if the employer received a monetary credit, the weekly support would immediately end, in direct contravention of the Act's purposes. *Id.* The Court observed that,

> in ensuring continued weekly support to an injured claimant whose award has been reduced, the citizens of this State are protected from having to care for workers, suddenly bereft of income, who had been unable or unwilling to appreciate the risk of their eventual lack of success before the circuit court.

*Id.* at 227, 703 A.2d 150 (citations omitted). The effect of the holding in *Philip Electronics* was that the claimant received $10,800.00 more in benefits than she was otherwise entitled to recover.

*St. Paul Fire and Marine Insurance Company v. Treadwell,* 263 Md. 430, 283 A.2d 601 (1971), on which the Court relied in *Philip Electronics,* is also useful to our analysis. There, the Court concluded that an employer was not entitled to recover compensation benefits even though the benefits were erroneously paid to the employee.

In *Treadwell,* the circuit court determined that the claimant was not entitled to an award of compensation. *Id.* at 430–31, 283 A.2d 601. By that point, however, the employer/insurer had already paid the claimant $5,081.49 in benefits, pursuant to the Commission's initial order. *Id.* at 431, 283 A.2d 601. As a result, the employer/insurer sought to recover the benefits erroneously paid, arguing that the right to challenge the Commission's decision would be "hollow ... if, after success on appeal, payments erroneously ordered cannot be recovered." *Id.* The employer/insurer also contended that if it was not permitted to recover the monies in issue, the claimant would be unjustly enriched. *Id.*

The Court disagreed, concluding that "the language of ... [the Act] reflects a legislative intent to preclude 'recovery back' upon any theory, except fraud perhaps." *Id.* at 439, 283 A.2d 601. The "no stay" provision in the Act (now codified in L.E. § 9–741) provides that an appeal of a decision of the Commission does not constitute a stay. Rather, the Court noted that it was designed

> "to ensure speedy, as well as certain, relief in proper cases within the scope of its application. That humanitarian policy would be seriously hampered if the weekly payments of compensation awarded by the commission could be suspended because of an appeal. In providing that an appeal should not be a stay, the statute was simply adopting a necessary expedient to accomplish one of the important purposes for which it was enacted."

*Id.* at 432, 283 A.2d 601 (quoting *Branch v. Indemnity Insurance Company of North America,* 156 Md. 482, 144 A. 696 (1929)). Moreover, the Court reasoned that "when the Legislature enacted the 'no-stay' provision ... it must have foreseen the possibility, and as well the probability, that payments would be made to claimants whose awards subsequently would be vacated on appeal." *Id.* at 437, 283 A.2d 601. Because the Legislature "made no provision for the restitution of those payments," *id.* at 437–38, 283 A.2d 601, however, the Court concluded that "restitution was considered and rejected." *Id.* at 438, 283 A.2d 601. The end result was that the claimant in

*Treadwell* received $5,081.49 in benefits to which the employee was not otherwise entitled.

Recently, in *Miller v. Sealy Furniture Company, et al.,* 125 Md.App. 178, 724 A.2d 743 (1999), we concluded that the Commission erred in ordering the deduction of an overpayment of temporary total disability benefits from the payment of permanent partial disability benefits subsequently awarded for the same injury. The Court said: "Since the compensation statute does not provide a procedure to offset or credit the overpayment of temporary total disability benefits against a subsequent award of permanent partial disability benefits, we hold that the Legislature intended to prohibit it." 125 Md.App. at 182, 724 A.2d 743.

In reaching our decision in *Sealy,* we were guided by *Montgomery County v. Lake,* 68 Md.App. 269, 511 A.2d 541 (1986). There, the claimant filed two separate claims arising from two separate injuries. The Commission awarded permanent partial disability benefits of $89.00 for 150 weeks for the first claim, and $89.00 for 87.5 weeks for the second claim. *Lake,* 68 Md.App. at 271, 511 A.2d 541. Following judicial review of the first award, the jury reduced the percentage of the claimant's disability. *Id.* at 272, 511 A.2d 541. The reduction meant that the employee received an overpayment of $8,900.00 in benefits on the first claim, which the employer had already paid. At the time of the jury's decision, the employer still owed the claimant $1,600.00 with respect to the second claim. *Id.* Accordingly, the employer suspended payments on the second claim in an effort to recover the overpayment on the first claim. We upheld the decision of the Commission, which "ruled that the [employer] was not entitled to offset the overpayment in the first claim against the unpaid, unaccrued benefits awarded in the second claim." *Id.* at 272, 511 A.2d 541. What we said is pertinent here:

Although the argument of unjust enrichment is attractive in a situation such as this where the claimant is overpaid in excess of $8,900 on a claim, it must nevertheless be rejected. It is firmly established in Maryland that once monies are paid out on a claim, those funds are not recoverable "on any

theory," absent fraud, even if the award is reduced or reversed on appeal. *St. Paul Fire & Marine Ins. Co. v. Treadwell,* 263 Md. 430, 439, 283 A.2d 601 (1971).

*Id.* at 274, 511 A.2d 541.

Accordingly, we concluded in *Lake* that the employer could not use an overpayment on one award to offset an obligation for another award, because that would improperly "depriv[e] [the claimant] of funds awarded to him by the Commission for a separate injury." *Id.* at 275, 511 A.2d 541. Moreover, we noted:

> "Such a contention flies in the teeth of the basic legislative design—that an injured worker (or his dependents) is entitled to receive seriatim the benefits for each of the separate disabilities as were caused by the nature and extent of his injury."

*Id.* at 276, 511 A.2d 541 (quoting *Mayor and City Council of Baltimore v. Oros,* 301 Md. 460, 470, 483 A.2d 748 (1984)). *Cf. Blevins v. Baltimore County,* 352 Md. 620, 724 A.2d 22 (1999) (concluding that L.E. § 9–610 does not permit set-off of disability retirement benefits against compensation awarded for the period prior to local government employee's retirement, and does not permit set-off of ordinary service-based retirement benefits to local government employee).

We have not uncovered any case suggesting that, under the circumstances attendant here, a claimant should receive *less* in benefit dollars than he or she is otherwise entitled to recover. Indeed, such a result would be an affront to the legislative scheme set forth in the Act. *See Lake,* 68 Md.App. at 276, 511 A.2d 541. Instead, we glean from the above cited cases a consistent theme: the Act is liberally construed so as to minimize hardship to the employee and his or her dependents. Consequently, absent a clear legislative directive, the approach that inures to the benefit of the employee is ordinarily favored. Thus, the appellate courts have not permitted an employer to recoup benefits erroneously paid to an employee. Rather, the cases have countenanced a claimant's recovery of benefits in excess of an amount the claimant is actually

entitled to receive. Similarly, in *Philip* Electronics, the court relied on the "weekly credit approach," which worked to the benefit of the employee. Because the benefits had already been paid, the monetary approach would have required the employee to repay what may have already been spent, generating a host of other problems.

To be sure, "workers' compensation cases must always turn on their individual facts." *Morris,* 339 Md. at 384, 663 A.2d 578. Under the facts of this case, however, the analysis urged by appellee promotes the benevolent purposes of the Act. If we were to credit appellants for the number of weeks for which they paid benefits, the Claimant would not receive the full amount of the compensation to which she is unquestionably entitled. As between a windfall to the Employer or payment of the correct amount to the Claimant, the choice seems obvious. Requiring the Employer to pay the correct monetary amount is consistent with the purpose of the Act, and is readily accomplished under the factual scenario of this case. Therefore, we conclude that when an award is increased upon judicial review, the Employer is not entitled to a credit based on the number of weeks for which benefits were paid. Rather, the Employer is entitled to a credit for the total amount of money actually paid to the Claimant prior to the increase.

**JUDGMENT AFFIRMED; APPELLANTS TO PAY COSTS.**