771 A.2d 1072

**AMETEK, INC., et al.**

v.

**Susan O'CONNOR.**

**No. 63, Sept. Term, 1999.**

Court of Appeals of Maryland.

May 10, 2001.

W. John Vernon (Lord & Whip, on brief), Baltimore, for petitioners.

Gerald F. Gay (Herbert J. Arnold, Arnold & Gay, P.A., on brief), Baltimore, for respondent.

Stan M. Haynes, William A. Kress, Semmes, Brown & Semmes, Baltimore (Asplundh Tree Expert Co.; Baltimore Gas & Elec. Co.; Bethlehem Steel Corp.; Sparrows Point Plant; John Hopkins Hosp.; Liberty Mut. Ins. Co.; Noxell Corp.; Westvaco Corp.), amicus curiae on behalf of Ametek.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY,* RAKER, WILNER, CATHELL, and HARRELL, JJ.

BELL, Chief Judge.

In *Philip Electronics North America v. Wright,* 348 Md. 209, 212, 703 A.2d 150, 151 (1997), in which the worker's compensation award to a claimant was reduced on judicial review, this Court held proper, "a credit based upon the number of weeks the employer has paid benefits," rather than one for the total amount of money paid to the claimant before the reduction of the original award. In a footnote, we observed:

> "*Philip Electronics* also argues at length that affirming the judgment of the Court of Special Appeals would be detrimental to claimants if the reasoning of the intermediate appellate court were applied to cases where an award is increased after the filing of a petition for judicial review, and the Commission must then determine whether to retroactively increase the award based on the number of weeks of benefits previously paid by the employer, or based on the total amount of monetary benefits previously received by the claimant. The issue is not presented in this case, and we express no opinion on that scenario."

*Id.* at 215 n. 4, 703 A.2d at 153 n. 4. This case presents that issue, namely, whether, after a claimant's workers' compensation award is increased on judicial review, the employer and insurer are entitled to a credit for the total amount paid to the

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

claimant pursuant to the award or just a credit for the number of weeks the employer/insurer paid benefits. The Circuit Court for Anne Arundel County held that the employer and insurer are entitled to a credit for the total amount paid. The Court of Special Appeals affirmed. We shall hold that the proper credit is for the number of weeks the award was paid, and, so, we reverse.

## I.

The respondent, Susan O'Connor, filed a claim for workers' compensation benefits against Ametek, Inc., her employer, and Home Indemnity, its insurer (collectively the "petitioners"), pursuant to Title 9 of the Labor and Employment Article, Maryland Code (1999 Repl.Vol., 2000 Cum.Supp.), the Workers' Compensation Act (the "Act"). After a hearing, the Workers' Compensation Commission awarded the respondent permanent partial disability benefits for 10% loss of use of her body and ordered the petitioners to pay 50 weeks of benefits at a weekly rate of $81.00 per week. Those benefits were paid pursuant to the Commission's order.

Dissatisfied with the award, the respondent filed a Petition for Judicial Review of the Commission's Order in the Circuit Court for Anne Arundel County. There, a jury increased the respondent's permanent partial disability to 70% loss of use of the body as a whole. On remand, the Commission determined that the respondent was entitled to permanent partial disability benefits for 467 weeks, payable at the rate of $134.00 per week, which award it ordered the petitioners to pay. Ultimately, however, persuaded by the motion for reconsideration filed by the petitioners, in which they urged their entitlement to a credit for the 50 weeks of compensation already paid, the Commission issued an order directing the petitioners to pay the respondent $134.00 per week for 417 weeks.

Again dissatisfied with the Commission's order, once again the respondent challenged it in the Circuit Court, by seeking judicial review. Faced with cross-motions for summary judgment, the trial court granted the respondent's and denied the petitioners'. It reasoned:

"I do believe that the [A]ct, as indicated in the Wright versus Philips case, should be liberally construed in favor of the claimant. And I do appreciate and acknowledge the arguments of counsel with regard to comparison of the facts in Wright versus Philips as opposed to the facts here. "I do find that the claimant is being compensated at the rate of $134 per week for a period of 417 weeks and she was previously compensated 50 weeks at $81 per week. That 50–week period was adjusted by the Commission in reducing the award from 467 to 417 weeks. And I believe and find that the claimant should be compensated for the difference and would therefore award a dollar judgment of $2,650 to accomplish that purpose, 50 weeks at $53 per week the difference, for a total of $2,650 to be paid to her."

The Court of Special Appeals agreed. *Ametek, Inc. v. O'Connor,* 126 Md.App. 109, 727 A.2d 437 (1999). After an extensive discussion of *Philip Electronics,* in which it stressed the remedial nature of the Workers' Compensation Act, the intermediate appellate court, although noting this Court's reliance on "[t]he 'weekly credit' approach [as being] consistent with the Act's benefit structure," *id.,* at 118, 727 A.2d at 441, concluded that crediting the petitioners with the number of weeks they paid benefits to the respondent, without adjusting for the fact that each of the weekly payments under the prior order was less than the weekly payments under the present order, "would contravene the purpose of the Act, as elucidated by the Court in *Philip Electronics,* 348 Md. at 226, 703 A.2d [at 158], and numerous other cases," as it would result in the respondent being underpaid by $ 2650.00. *Ametek* at 116, 727 A.2d at 440. Further explaining its holding, the intermediate appellate court stated:

"We have not uncovered any case suggesting that, under the circumstances attendant here, a claimant should receive *less* in benefit dollars than he or she is otherwise entitled to recover. Indeed, such a result would be an affront to the legislative scheme set forth in the Act. *See [Montgomery County v.] Lake,* 68 Md.App. at 276 [, 511 A.2d at 544–45]. Instead, we glean from the above cited cases a consistent

theme: the Act is liberally construed so as to minimize hardship to the employee and his or her dependents. Consequently, absent a clear legislative directive, the approach that inures to the benefit of the employee is ordinarily favored. Thus, the appellate courts have not permitted an employer to recoup benefits erroneously paid to an employee. Rather, the cases have countenanced a claimant's recovery of benefits in excess of an amount the claimant is actually entitled to receive. Similarly, in *Philip Electronics* [*North America v. Wright*, 348 Md. 209, 703 A.2d 150 (1997)], the court relied on the 'weekly credit approach,' which worked to the benefit of the employee. Because the benefits had already been paid, the monetary approach would have required the employee to repay what may have already been spent, generating a host of other problems. "'To be sure, 'workers' compensation cases must always turn on their individual facts.' *Morris* [*v. Board of Educ. of Prince George's County*, 339 Md. 374, 663 A.2d 578 (1995)], 339 Md. at 384. Under the facts of this case, however, the analysis urged by appellee promotes the benevolent purposes of the Act. If we were to credit appellants for the number of weeks for which they paid benefits, the Claimant would not receive the full amount of the compensation to which she is unquestionably entitled. As between a windfall to the Employer or payment of the correct amount to the Claimant, the choice seems obvious. Requiring the Employer to pay the correct monetary amount is consistent with the purpose of the Act, and is readily accomplished under the factual scenario of this case. Therefore, we conclude that when an award is increased upon judicial review, the Employer is not entitled to a credit based on the number of weeks for which benefits were paid. Rather, the Employer is entitled to a credit for the total amount of money actually paid to the Claimant prior to the increase."

*Id.* at 122–23, 727 A.2d at 443–44.

We granted the petitioner's Petition for Certiorari, *Ametek, Inc. v. O'Connor*, 355 Md. 610, 735 A.2d 1105 (1999), to address this issue of first impression.

## II.

In this Court, the petitioners contend that the intermediate appellate court erred by holding that an employer who has paid benefits pursuant to a workers' compensation award which is increased on judicial review is entitled to receive credit for the amount actually paid, rather than for the number of weeks those payments were made. Not only did the Workers' Compensation Commission correctly interpret the Act, but, they maintain, this Court, in *Philip Electronics,* 348 Md. at 220–21, 703 A.2d at 155–56, has already considered and "rejected a 'dollar-for-dollar' credit for previously paid benefits as improper and inconsistent with the structure and purpose of the Act." Hence, the petitioners assert that they are entitled to a credit for the period of 50 weeks that they previously paid pursuant to the Commission's initial order.

Not unexpectedly, the respondent believes the Circuit Court and the intermediate appellate court correctly decided the issue. To her, that the "Act is remedial in nature and should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes" is critical and dispositive. Distinguishing *Philip Electronics* as a case involving the overpayment of benefits, and not underpayment, as in the case *sub judice,* the respondent argues that "to deprive Claimant of benefits to which she is entitled does nothing to advance these purposes and is directly contrary to the overall statutory scheme."

## III.

*Philip Electronics, supra,* 348 Md. 209, 703 A.2d 150, controls the result in this case. There, the claimant having suffered a knee injury during the course of her employment and, subsequently, while attempting rehabilitation to the knee, developed an adverse psychological condition, filed a claim with the Workers' Compensation Commission against her employer and its insurer. *Id.* at 212, 703 A.2d at 151. The Commission found, based on the knee injury and the psychological overlay, that the claimant had suffered a permanent partial disability loss of 50% of the use of her body as a whole,

under "other cases," [1] *id.* at 212, 703 A.2d at 151, and, accordingly, ordered that she be paid permanent partial disability benefits at the rate of $178 per week for 333 weeks pursuant to § 9–630. *Id.*

Both parties having filed a petition for judicial review in the Circuit Court for Dorchester County, a jury determined that the claimant's permanent partial disability was a 40% loss of the use of her body as a whole. On remand, the Commission recalculated the benefits to which the claimant was entitled, reducing them to $144 per week for 200 weeks, and credited the employer for the monetary payments it had made pursuant to the Commission's prior order. *Id.* at 212–13, 703 A.2d at 151.

After the Circuit Court, on judicial review, affirmed the Commission's decision and the Court of Special Appeals, rejecting the "total monetary" credit approach, reversed the judgment of the Circuit Court, this Court granted the employer's petition for writ of certiorari. Affirming the judgment of the intermediate appellate court, we focused on the language of § 9–627(k), that of § 9–628 [2] and § 9–629,[3] § 9–630 [4] being

---

**1.** Maryland Code (1999 Repl.Vol., 2000 Supp.), § 9–627(k) of the Labor and Employment Article governs "other cases." It provides:

"(k) Other cases.—(1) In all cases of permanent partial disability not listed in subsections (a) through (j) of this section, the Commission shall determine the percentage by which the industrial use of the covered employee's body was impaired as a result of the accidental personal injury or occupational disease.

"(2) In making a determination under paragraph (1) of this subsection, the Commission shall consider factors including:

"(i) the nature of the physical disability; and

"(ii) the age, experience, occupation, and training of the disabled covered employee when the accidental personal injury or occupational disease occurred.

"(3) The Commission shall award compensation to the covered employee in the proportion that the determined loss bears to 500 weeks.

"(4) Compensation shall be paid to the covered employee at the rates listed for the period in §§ 9–628 through 9–630 of this Part IV of this subtitle."

**2.** Section 9–628 pertains to compensation payments for less than 75 weeks.

inapplicable, discerning from the language of those sections a clear and unambiguous demonstration of a legislative commitment to the payment of permanent partial disability benefits within a weekly framework, 348 Md. at 218, 703 A.2d at 154, and that such an intent is consistent with the purposes sought to be achieved by the Workers' Compensation Act. Our clear holding was that "any credit for previous payments should ... be expressed by 'weeks.'" *Id.* at 221, 703 A.2d at 155.

The *Philip Electronics* Court started its analysis of the applicable statutory provisions with § 9–627(k), which authorized the claimant's award. In addition to itself referencing the proper unit of consideration, *see* subsection (k)(3), *supra,* at n. 1, the Court observed:

"As paragraph (4) of subsection (k) of § 9–627 indicates, the award of permanent partial disability benefits is governed by three independent sections of the Act. Section 9–628, not relevant here, authorizes compensation for less than 75 weeks. Section 9–630, which governs compensation to an injured worker for a period of greater than 250 weeks,

---

**3.** Section 9–629, applicable when compensation is awarded for period equal to or greater than 75 weeks but less than 250 weeks, provides:

"If a covered employee is awarded compensation for a period equal to or greater than 75 weeks but less than 250 weeks, the employer or its insurer shall pay the covered employee weekly compensation that equals two-thirds of the average weekly wage of the covered employee but does not exceed one-third of the State average weekly wage."

**4.** Section 9–630, governing serious disability, for which compensation is paid for 250 weeks or more, provides:

"(a) In general.—(1) Except as provided in paragraph (2) of this subsection, if a covered employee is given an award or a combination of awards resulting from 1 accidental personal injury or occupational disease for 250 weeks or more under § 9–627 of this subtitle:

"(i) the Commission shall increase the award or awards by one-third the number of weeks in the award or awards, computed to the nearest whole number; and

"(ii) the employer or its insurer shall pay the covered employee weekly compensation that equals two-thirds of the average weekly wage of the covered employee, but does not exceed 75% of the State average weekly wage.

"(2) An award for disfigurement or mutilation under § 9–627(i) of this subtitle may not be used to make up the 250 weeks under paragraph (1) of this subsection."

authorized Wright's original award on November 30, 1992 by the Commission. When Wright's award was reduced to 200 weeks, that award was granted pursuant to § 9–629, which covers compensation for a period equal to or greater than 75 weeks, but less than 250 weeks."

348 Md. at 219, 703 A.2d at 154–55.

After reviewing the three provisions referenced by § 9–627 and § 9–627 itself, it concluded:

"These statutory provisions reflect the intent of the General Assembly that the payment of permanent partial disability benefits be based upon a weekly framework. Of greatest significance, the specific sections governing the payment of benefits, § 9–629 and § 9–630, are distinguished by the number of weeks of compensation awarded. The general statutory provision, § 9–627(k)(3), also states that benefits shall be paid "in the proportion that the determined loss bears to 500 weeks." Again, the Act emphasizes the weekly nature of an award of benefits.

"The language of the specific sections of the Act also reinforces the legislative focus upon the weekly nature of the payment scheme. Both § 9–629 and § 9–630(a)(1)(ii) expressly state that "the employer or its insurer shall pay the covered employee weekly compensation." Section 9–630(a)(1) speaks of a covered employee being awarded compensation "for 250 weeks or more," and § 9–630(a)(1)(i) mandates that "the Commission shall increase the award or awards by one-third the number of weeks." Finally, the Act states that "[a]n award for disfigurement or mutilation under § 9–627(i) of this subtitle may not be used to make up the 250 weeks under paragraph (1) of this subsection." § 9–630(a)(2) (emphasis added). It is telling that in barring an offset against an award from another subsection of the Act, the General Assembly chose to characterize an award under § 9–630(a) in terms of weeks, rather than as a monetary amount."

*Id.* at 220–21, 703 A.2d at 155. In short, the plain language of the Act led the Court to the conclusion "that the Legislature

expressed a commitment to the payment of permanent partial disability benefits based on a weekly framework, rather than focusing upon the total monetary value of such an award." *Id.* at 121, 703 A.2d at 155.

Other than the fact that, in this case, § 9–628, which directs the payment of permanent partial compensation for a period of less than 75 weeks, authorized the respondent's original award of 50 weeks, rather than, as in *Philip Electronics,* § 9–629, which directs such payments for a period equal to or greater than 75 weeks, but less than 250 weeks, what we said in *Philip Electronics* applies with equal force to the case *sub judice.* In other words, the analysis applicable to cases involving the subsequent reduction of a workers' compensation award is just as compelling when applied to those cases in which the award has subsequently been increased.

Some of our sister jurisdictions have reached like results. In *Humpty Dumpty v. Moorehead,* 569 P.2d 998 (Okla.1977), for example, the claimant was originally awarded 298 weeks of temporary total disability benefits, payable at a weekly rate of $45.00 per week. Subsequently, after the claimant reached maximum medical improvement, he was awarded 500 weeks of permanent total disability benefits, payable at a weekly rate of $40 per week. Credit was given the employer for the 298 weeks that compensation was paid. The Oklahoma Supreme Court rejected the contention of the employer that "the weeks allowed for the temporary total compensation should be transposed into dollars, *i.e.,* 298 weeks times $45.00, and thus this total deducted from maximum compensation allowable for permanent total disability, or 500 weeks at $40.00 per week." *Id.* at 999. It held that "[t]he calculation of credit for temporary total disability payments made ... is to be made on the basis of the number of weeks payments were made, and not on the basis of the amount of money paid out." *Id.* at 1000.[5] *See*

---

**5.** In *Alonzo v. Homeland Stores,* 861 P.2d 348, 348–49 (Okla.App.1993), the court distinguished *Humpty Dumpty v. Moorehead,* 569 P.2d 998 (Okla.1977), as follows:

*Sturgis v. Int'l Paper Co.*, 525 So.2d 813, 815 (Miss.1988) (holding that the proper credit is number of weeks and not total of earnings for the week) (quoting and applying Larson, *Workmens Compensation Law,* 57.47.[6]); *Gen. Elec. Co. v. Philip C. Morris,* 670 S.W.2d 854, 856 (Ky.1984) (concluding "that each weekly voluntary payment should be credited against each weekly workers' compensation payment due to the extent that the weekly voluntary payment does not exceed the weekly compensation payment."); *Duffy Bros. Constr. Co., Inc. v. Pistone Builders, Inc.*, 207 Neb. 360, 299 N.W.2d 170, 174 (Neb.1980) (deciding, after quoting and applying Larson, *Workmens Compensation Law,* 57.47, that employer was properly given credit for the 15 weeks); *Stockton v. Indus. Comm'n,* 69 Ill.2d 120, 12 Ill.Dec. 744, 370 N.E.2d 548, 549

---

"In *Moorehead,* the Oklahoma Supreme Court addressed the 500 week limit on total disability benefits formerly found in 85 O.S.Supp. 1974 § 22(1), and found that under this cap the weeks of *temporary* total disability paid had to be counted when calculating the number of weeks of *permanent* total disability benefits payable. In 1977, this ceased to be an issue in workers' compensation cases because the 500 week cap on total disability benefits in § 22(1) was repealed, and total disability benefits became payable so long as total disability continued. See 85 O.S.1991 § 22(1)."

Also in that case, the court pointed out that:

"The Legislature has provided, in 85 O.S.1991 § 41(A) that

"Awards for permanent partial disability under Section 22 of this title shall be made for the total number of *weeks* of compensation which the Court shall find the claimant will be entitled to receive, less any *sums* previously paid which the Court may find to be a proper credit thereon. (Emphasis added.)

"Under § 41(A), benefits are to be awarded in weeks, but credits are to be calculated in 'sums.' The word 'sums' refers to money. *Wetz v. Elliott,* 4 Okl. 618, 51 P. 657, 658 (1896). The plain meaning of this statute is that credits allowed under § 41 against the permanent partial benefits awarded under § 22 are to be calculated in dollar amounts."

*Id.* at 349.

**6.** Professor Larson explains:

"The amount of credit is not the amount of the wages paid, but the amount of compensation due for the particular week. Thus, if the wage paid was $200, and if the compensation due for the week was $150, the credit is for $150 only. In other words, the credit is for the week, not for a number of dollars, and the excess cannot be carried over as a credit against other weeks of liability."

(1977) (noting that both petitioner and respondent "agree that the employer is entitled to credit for the number of weeks"); *Brittle v. Raybestos–Manhattan, Inc.,* 241 S.C. 255, 127 S.E.2d 884, 886 (1962) (finding that the proper credit is for the week, not the number of dollars and "[t]his can be easily defended under the intention rule, since the employer cannot be ascribed an intention to make certain payments in lieu of compensation when the payments are too small to be compensation benefits.").

The Court of Special Appeals, as does the respondent, recognizes this Court's conclusion in *Philip Electronics,* that "the General Assembly intended that an employer's credit for the payment of permanent partial disability benefits be based upon the number of weeks of compensation previously paid, absent clear legislative expression to the contrary." 348 Md. at 225, 703 A.2d at 158. Nevertheless, focusing on the purpose of the Act, with which the *Philip Electronics* Court indicated its decision was consistent, the intermediate appellate court reaches the opposite result to that which that Court reached.

To be sure, in *Philip Electronics,* this Court began its analysis with the purpose of the Workers' Compensation Act, "to compensate employees for the loss of earning capacity resulting from accidental injury, disease, or death occurring during the course of employment." 348 Md. at 215–16, 703 A.2d at 153. We also addressed the canons of construction as relates to the Act. *Id.* Noting its remedial nature, we reiterated that the Act " 'should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes.' " *Id.* at 216, 703 A.2d at 153 (quoting *Para v. Richards Group,* 339 Md. 241, 251, 661 A.2d 737, 742 (1995)) (quoting *Howard Co. Ass'n for Retard. Cit. v. Walls,* 288 Md. 526, 530, 418 A.2d 1210, 1213 (1980)). We also pointed out, however, that, while uncertainty is resolved in the claimant's favor when the intent of the Legislature is ambiguous or remains unclear, *id.* at 217, 703 A.2d at 153–54, citing *Baltimore v. Cassidy,* 338 Md. 88, 97, 656 A.2d 757, 761–62 (1995) and *Lovellette v. Baltimore,* 297 Md. 271,

282, 465 A.2d 1141, 1147 (1983), "[t]his Court . . . may not stifle the plain meaning of the Act, or exceed its purposes, so that the injured worker may prevail," *id.* at 217, 703 A.2d at 154, citing *Morris v. Bd. of Educ.,* 339 Md. 374, 384, 663 A.2d 578, 583 (1995), and "may not create ambiguity or uncertainty in the Act's provisions where none exists so that a provision may be interpreted in favor of the injured claimant." *Id.,* citing *R & T Constr. v. Judge,* 82 Md.App. 700, 709, 573 A.2d 96, 100 (1990), *modified,* 323 Md. 514, 594 A.2d 99 (1991).

As the intermediate appellate court points out, the Court did state that the holding in *Philip Electronics* was consistent with several basic purposes served by the Act and identified them: "to protect workers and their families from hardships resulting from work-related injuries by providing compensation to workers for loss of earning capacity," 348 Md. at 226, 703 A.2d at 158, citing *Victor v. Proctor & Gamble,* 318 Md. 624, 628, 569 A.2d 697, 699 (1990), and "benefits the taxpayers of the State of Maryland in helping to prevent the State from having to assume the financial responsibility of caring for injured workers and their dependents." *Id.* Moreover, the Court explained how the purposes were furthered in that case:

"The result we reach today furthers both of these purposes. In this case, Wright will continue to receive the weekly payment of benefits for the allotted number of weeks, albeit reduced to accurately reflect the degree of her injury as determined by a jury. By contrast, the result advocated by *Philip Electronics* would immediately sever such weekly support, in direct contravention of one purpose of the Act. *See Bayshore Industries v. Ziats,* 229 Md. 69, 76–77, 181 A.2d 652, 656 (1962) (recognizing 'the general policy which the prohibition against stay by reason of an appeal has been held . . . to serve—that of affording day to day support to injured employees'). Moreover, in ensuring continued weekly support to an injured claimant whose award has been reduced, the citizens of this State are protected from having to care for workers, suddenly bereft of income, who had been unable or unwilling to appreciate the risk of their eventual lack of success before the circuit court. *Polomski,*

344 Md. at 76–77, 684 A.2d at 1341; *see Triangle Insulation v. Stratemeyer*, 782 S.W.2d 628, 630 (Ky.1990) ('An employee who has received an overpayment of income benefits should not be deprived of future income as a result of any such overpayment.'); *Ransier*, 766 P.2d at 277 ('[S]uch a construction [of the statute] would place Ransier in the untenable position of using the benefits paid to him at the risk of having to repay them at a point when his family resources were even more greatly stressed.'); *see also Benedict v. Office of Workers' Comp.*, 29 F.3d 1140, 1142 (7th Cir.1994) (noting that under federal law "recovery of an overpayment defeats the purpose of the Act where it would 'deprive a person of income required for ordinary and necessary living expenses'") (quoting 20 C.F.R. § 410.561c(a)) (footnote omitted)."

*Id.* at 226–27, 703 A.2d at 158.

Neither of the identified purposes is at risk of contravention in this case. There has been no overpayment by the employer/insurer and, therefore, there is no reason for concern about hardship that might attend the obligation to repay benefits received and used, but to which there was no entitlement. Nor is there in this case any danger that the respondent will not have the day to day support to which she is entitled as a result of her injury. The result of the jury's verdict was to increase both the amount of weekly payments and their duration. Thus, rather than 50 weeks of benefits, the respondent will now be entitled, after the credit, to 417 weeks, payable at the higher rate than the original award.

There is a bit of an equity issue in this case, only, unlike *Philip Electronics*, it affects the respondent, rather than the employer/insurer and it is that issue about which both the respondent and the Court of Special Appeals expressed concerned and found dispositive. We rejected the equity argument in *Philip Electronics*, reasoning that whether "the overpayment . . . is unjust or inequitable must be considered in light of the operation of the Act as a whole," 348 Md. at 228, 703 A.2d at 159, and that "[a] single transaction does not represent the appropriate focal point to determine the fairness

or equity of the application of the Act." *Id.* Further explaining our rejection of the argument, we said:

"As this Court has noted in the past, the Act reflects the Legislature's considered judgment as to the appropriate allocation of resources between employers, employees, and the taxpayers of this State. *Polomski,* 344 Md. [70,] 76–77, 684 A.2d [1338,] 1340–41 [(1996)]. Significantly, Philip Electronics, as a party to this political equation, receives a valuable benefit in that they are relieved 'from the vagaries of tort liability.' *Id.* at 77, 684 A.2d at 1341. For instance, unlike a tort recovery, benefits paid pursuant to the Act compensate only for loss of earning capacity, and do not seek to return a claimant to his or her pre-disability state. 1 Larson, *supra,* § 2.50, at 1–9.

'Compensation awarded on [a] fault-free basis under the statutory plan substitutes for an employee's common law right to bring a fault-based tort suit against an employer for damages resulting from the employee's injury or disablement on the job....

\* \* \* \*

'Employers who purchase workers' compensation insurance and otherwise comply with the law of workers compensation can ... count on avoiding a negligence lawsuit.' "

*Id.* at 228–29, 703 A.2d at 159, quoting *DeBusk v. Johns Hopkins,* 342 Md. 432, 438, 677 A.2d 73, 75–76 (1996).

A similar analysis is applicable to the equity argument in favor of the respondent. Her situation cannot be judged in isolation either, but must be considered in the context of the Act as a whole. Moreover, she too, "a party to this political equation," receives the valuable benefit of being relieved "from the vagaries of tort liability." What we said in *DeBusk* about the interpretation of the limitations period prescribed by § 9–709 is instructive, in that regard:

"The Workers' Compensation Act, Md.Code (1957, 1991 Repl.Vol., 1995 Cum.Supp.), § 9–101 *et seq.* of the Labor &

Employment Article ... was designed to provide employees with compensation for loss of earning capacity, regardless of fault, resulting from accidental injury, disease, or death occurring in the course of employment. *Queen v. Agger,* 287 Md. 342, 343, 412 A.2d 733, 733–34 (1980); *Howard County Ass'n for Retarded Citizens v. Walls,* 288 Md. 526, 531, 418 A.2d 1210, 1214 (1980); *Bethlehem–Sparrows Point Shipyard v. Damasiewicz,* 187 Md. 474, 480, 50 A.2d 799, 802 (1947). Compensation awarded on this fault-free basis under the statutory plan substitutes for an employee's common law right to bring a fault-based tort suit against an employer for damages resulting from the employee's injury or disablement on the job. *See* § 9–509 of the Act (compensation provided to a covered employee under the Act replaces any right of action against any person, including the employer); *Brady v. [Ralph M.] Parsons Co.,* 327 Md. 275, 279, 609 A.2d 297, 298–99 (1992); *Gray v. State Roads Comm'n,* 253 Md. 421, 427–28, 252 A.2d 810, 812 (1969); *Unsatisfied Claim Bd. v. Salvo,* 231 Md. 262, 264, 189 A.2d 638, 639 (1963); *Baltimore Transit Co. v. State,* 183 Md. 674, 677, 39 A.2d 858, 859 (1944).

"Gone are the days when an injured employee had to bring an uncertain and potentially expensive lawsuit against his employer, face numerous common law defenses which operated in favor of the employer, and often lose the suit in the end. Employees who follow the procedural rules of the Act and can prove they were injured while working can almost certainly recover compensation to prevent undue hardships caused by loss of wages and medical expenses. Employers who purchase workers' compensation insurance and otherwise comply with the law of workers' compensation can likewise count on avoiding a negligence lawsuit. Courts and commentators over the decades have noted how the Act strikes an important balance between the need to provide some form of financial benefits to injured or sick employees and the need, of both employers *and* employees, to avoid expensive and unpredictable litigation over accidents in the workplace. *See* Richard P. Gilbert & Robert L. Hum-

phreys, Jr., *Maryland Workers' Compensation Handbook* §§ 1.0–1.2 (2d ed.1993 & Supp.1996).

"Predictability and administrative ease, in the workers' compensation statutory plan as in all things, come at the price of *some* flexibility in unique or unusual circumstances. Objective standards and bright-line rules such as statutes of limitations are the very keys to predictability, in the sense that everyone is treated in the same manner and everyone knows or can discover the rules in advance of their application. By their very nature, though, such rules and standards cannot make exceptions for every scenario which might arise."

342 Md. at 437–39, 677 A.2d at 75–76.

Just as predictability and administrative ease are important from the standpoint of the timing of actions, so too are they important in establishing the rules governing the award of permanent partial disability benefits. It simply will not do to have different rules, depending upon whether it is the claimant or the employer to whom the result is inequitable. Whether a credit is the amount the employer has paid or for the number of weeks the employer has paid should be determined on some principled and consistent basis and not made to depend upon which of the parties it will benefit. As the petitioner submits, "The Act should not be interpreted differently depending on the outcome in different claims."

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.

ELDRIDGE, J., dissents.

ELDRIDGE, Judge, dissenting:

For the reasons set forth in Judge Hollander's excellent opinion for the Court of Special Appeals, *Ametek v. O'Connor*, 126 Md.App. 109, 727 A.2d 437 (1999), I would affirm the judgment of the Court of Special Appeals.