65 A.3d 692

**Andrew P. SWEDO, Jr.**

v.

**W.R. GRACE & CO., et al.**

**No. 998, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

May 1, 2013.

Matt M. Paavola, (Brendan E. Pedersen, Workers' Comp Law Firm, LLC, on the brief), Baltimore, MD, for Appellant.

Julie D. Murray, (Anthony J. Zaccagnini, Semmes, Bowen, Semmes, on the brief), Baltimore, MD, for Appellee.

Panel: KRAUSER, C.J., KEHOE and JAMES P. SALMON (Retired, Specially Assigned), JJ.

SALMON, J.

When a worker in Maryland suffers an accidental injury that results in a permanent partial disability, his or her award is expressed by a number of dollars per week for a fixed number of weeks. For instance, the injured worker who brings this appeal was initially granted an award by the Maryland Worker's Compensation Commission (the "Commission") of $234 per week for 200 weeks. If a petition for judicial review had not been filed, the worker would have received a total of $46,800 ($234 × 200).

In this case, however, the injured worker filed a petition for judicial review in the Circuit Court for Baltimore County in which he claimed that the award was too low. It took 148 weeks before the Circuit Court action was concluded and the Commission passed a new order. In that period, the injured worker received from his employer a total of $34,632 ($234 × 148). A jury determined that the claimant had a higher percentage of permanent partial disability than that found by the Commission. That higher percentage of disability would have, if it had been an original order, indisputably entitled the claimant to receive $525 per week for 333 weeks or $174,825.

The problem that arose in this case concerns how much credit the employer/insurer should receive for the 148 payments it made between the initial award and the time that the Commission passed a new order based on the jury award. The injured worker takes the position that the employer/insurer should receive a dollar credit, i.e., a credit for $34,632. The employer, W.R. Grace & Co. and its insurer, Hartford Insurance Co. of the Mid West (hereinafter referred to collectively

as "the employer"), however, take the position that a credit should be given for the number of weeks payments were made in accordance with the Commission's original order. According to the employer, it was only required to pay $525 for the 185 weeks (333 less 148) that remained and should be given a credit, not in the amount of the dollars paid, but based on the number of weeks payments were made.

The argument espoused by the injured worker will hereinafter be referred to as the "dollar credit" theory. The employer's argument will be referred to as the "weeks credit" theory.

Under the dollar credit theory, the claimant, after giving the employer credit for the $34,632 paid, would be entitled to receive "new money" in the amount of $140,193 ($174,825 less $34,632). Under the weeks credit theory, however, the employer would get credit for the payments made for 148 weeks and would only have to pay $525 per week for 185 weeks. In other words, instead of paying the worker "new money" in the amount of $140,193 the employer would be required to pay only $97,125 ($525 × 185).

■ In 2001, the Maryland General Assembly passed a statute attempting to clarify whether the dollar credit theory or the weeks credit theory should be utilized when the compensation amount was either increased or decreased on an appeal[1] to the circuit court. That statute is now codified in Md.Code (2008 Repl.Vol.), Labor and Employment Article ("LE") section 9–633:

> If an award of permanent partial disability compensation is reversed or modified by a court on appeal, the payment of any new compensation awarded shall be: (1) subject to a credit for compensation previously awarded and paid; and

---

1. Technically, a petition for judicial review, like the one filed in this case, is not an "appeal; it is an original action in the circuit court for judicial review." *Del Marr v. Montgomery County*, 397 Md. 308, 319 n. 4, 916 A.2d 1002 (2007). Nevertheless, the General Assembly, when it passed what is now Md.Code (2008 Repl.Vol.), Labor & Employment Article, section 9–633, refers to such judicial review actions as an "appeal."

(2) otherwise made in accordance with this Part IV of this subtitle.[2]

In the subject case, after the jury's award, the Commission ruled in favor of the employer by adopting the position that the credit should be based on weeks rather than dollars. The claimant filed a second petition for judicial review in the Circuit Court for Baltimore County in which he claimed that the Commission erred by rejecting his dollar credit theory. The employer and the claimant filed cross-motions for summary judgment. The circuit court ruled that the weeks credit position espoused by the employer was legally correct. Accordingly, the court granted the employer's motion for summary judgment and denied the claimant's motion. In this timely appeal, the claimant raises one question, which he phrases as follows:

> Does ... LE § 9–633 require the ... Commission to issue credits in terms of dollars or in terms of weeks in those situations where a Circuit Court has reversed the Commission's first ever permanent partial disability award?

The question appellant presents was the subject of four reported decisions decided by Maryland appellate courts prior to October 1, 2001, which was the effective date of LE § 9–633. Since then, however, no reported Maryland case has dealt with a case where section 9–633 was directly at issue. Nevertheless, the Court of Appeals in *Del Marr v. Montgomery County*, 397 Md. 308, 916 A.2d 1002 (2007), said, *in dicta*, that absent a strong showing of legislative history demonstrating a contrary intent [concerning the enactment of LE § 9–633], credit should be given the employer based on weeks rather than dollars. 397 Md. at 320, 916 A.2d 1002.

In our view, based on the language used in LE § 9–633 together with the legislative history of LE § 9–633, a dollar credit rather than a weeks credit methodology should have been utilized in this case. We shall therefore reverse the

---

2. Under "Part III of this sub-title" refers to section 9–626 to 9–633 of LE, all of which deal with permanent partial disability.

judgment of the circuit court and remand the case to that court with instructions to enter summary judgment in favor of the injured worker and to remand the case to the Commission with instructions to grant the employer credit based on the dollars paid by the employer for 148 weeks.

## I.

### Undisputed facts.

Andrew Swedo, Jr. was injured on November 3, 2002 when he fell from a ladder and sustained injuries to his right shoulder and left leg. He also suffered psychiatric injuries. He was injured while in the course of employment with W.R. Grace & Co., Inc. The Commission filed an order on June 23, 2006 finding that Mr. Swedo had a 70% permanent partial disability under "other cases," industrial loss of use of the body, "40% of which is reasonably attributable to the accidental injury that occurred on November 3, 2002." This computed to a total award of $46,800 ($234 × 200 weeks). Mr. Swedo filed a petition for judicial review in the Circuit Court for Baltimore County and requested a jury trial. The jury found in favor of Mr. Swedo by modifying his permanent partial disability to 70% permanent partial disability under "other cases," 50% of which was due to the November 3, 2002 accident. The change from 40% to 50% disability increased the award to $525 per week for a period of 333 weeks. As previously mentioned, the Commission gave the employer credit for the 148 weeks that compensation had been paid.

## II.

### Maryland appellate cases decided prior to the effective date of LE § 9–633.

#### A. *Wright v. Philip Electronics North American Corporation,* 112 Md.App. 642 (1997).

Patricia Wright was injured in an accident while working for Philip Electronics North America Corporation. *Id.* at 644, 685 A.2d 1216. Initially, the Commission found that Ms. Wright

had sustained a permanent partial disability of 50% and was entitled to benefits of $178 per week for 333 weeks. Philip Electronics and its insurer filed a petition for judicial review in the Circuit Court for Dorchester County where a jury found that Ms. Wright had sustained a permanent partial disability of only 40%. The Commission interpreted the decision to mean that Ms. Wright was entitled to only $144 in permanent partial disability benefits for 200 weeks, subject to a credit for the dollars actually paid by the employer.

Wright filed a petition for judicial review in which she argued that the amount of credit should be based on weeks rather than dollars. In the circuit court, both sides filed summary judgment motions. *Id.* The circuit court granted the employer's motion and affirmed the Commission's ruling that the employer was entitled to a dollar credit. *Id.*

Ms. Wright filed an appeal to this court and we reversed the circuit court's decision. *Id.* 112 Md.App. at 655, 685 A.2d 1216. We held that the weekly credit approach should have been utilized because it was "consistent with the Act's benefit structure." *Id.* at 649, 685 A.2d 1216. We went on to explain:

It follows naturally that if the compensation structure is expressed in terms of 'weeks,' then any credit for previous payments should also be expressed by 'weeks.' Only by using this method is it possible to insure that credit given for previous payment is consistent with the Act's policies and structure.

*Id.* at 649–50, 685 A.2d 1216.

### B. *Philip Electronics v. Wright,* 348 Md. 209 (1997).

In *Philip Electronics,* the Maryland Court of Appeals affirmed the judgment of this court, holding that the employer "was entitled to a credit only for the number of weeks of benefits actually paid pursuant to the Commission's original order." 348 Md. at 229, 703 A.2d 150. The Court stated:

We conclude the language of § 9–627(k), as well as the language of § 9–629 and § 9–630, clearly and unambiguously demonstrate a legislative commitment to the payment of

permanent partial disability benefits within a weekly framework. The purpose sought to be achieved by the Act further reinforces this legislative intent. In addition, Philip Electronic's argument that the payment to Wright of another 58 weeks of benefits is inequitable, and amounts to an unjust windfall to her, fails when analyzed within the circumstances surrounding the statutory history of the Act.

*Id.* at 218, 703 A.2d 150.

After a detailed analysis of LE, sections 9–627, LE 9–629 and LE 9–630, the Court also said:

It is telling that in barring an offset against an award from another subsection of the Act, the General Assembly chose to characterize an award under § 9–630(a) in terms of weeks rather than as a monetary amount.

*Id.* at 220–21, 703 A.2d 150.

As can be seen, in *Philip Electronics v. Wright,* the injured worker benefitted by a weeks credit approach.

### C. *Ametek v. O'Connor,* 126 Md.App. 109 (1999).

The issue presented in *Ametek,* as in the present case, called for a determination as to how to calculate the credit due to an employer/insurer for benefits paid to a claimant prior to an increase in the claimant's award that resulted from judicial review. 126 Md.App. at 111, 727 A.2d 437. In *Ametek,* the claimant, Susan O'Connor, argued "that the credit must be commensurate with the total monetary benefits actually paid, while the employer/insurer contended that the credit must be based on the actual number of weeks for which benefits were paid." *Id.*

The Commission initially found that Ms. O'Connor had sustained a permanent partial disability of 10% of her body as a whole, and therefore was entitled to benefits of $81 per week for 50 weeks or $4,050 ($81 × 50). *Id.* But after a jury found that Ms. O'Connor had sustained a permanent partial disability of 70% of the body as a whole, the Commission determined that she was entitled to a disability benefit of $134 per week for 467 weeks or $63,784. Ms. O'Connor's employer, *Ametek,* filed a motion for reconsideration in which it sought a credit

for the 50 weeks of compensation benefits that were paid to Ms. O'Connor prior to the jury's increase in the percentage of disability. *Id.* The Commission agreed to reduce the employer's obligation by 50 weeks. Accordingly, Ms. O'Connor's disability benefits were calculated at $134 per week for 417 weeks rather than 467 weeks. *Id.* The circuit court, however, reversed the Commission and ordered the employer to pay permanent partial disability benefits of $134 for 467 weeks less a credit of $4,050. *Id.* This court affirmed the circuit court's judgment. *Id.* at 123, 727 A.2d 437. In doing so, we acknowledged that the case "presents the flip side of *Philip Electronics North America v. Wright . . . .*" *Id.* In upholding the ruling by the circuit court, we stressed that the Worker's Compensation Act "is a remedial statute, and its provisions are liberally construed in favor of employees in order to realize the Act's benevolent purposes." *Id.* at 116, 727 A.2d 437. We went on to say: "that when an award is increased upon judicial review, the [e]mployer is not entitled to a credit based on the number of weeks for which benefits were paid. Rather, the [e]mployer is entitled to a credit for the total amount of money actually paid to the claimant prior to the increase." *Id.* at 233, 703 A.2d 150. The Court of Appeals subsequently granted Ametek's petition for a writ of *certiorari,* 355 Md. 610, 735 A.2d 1105 (1999).

### D. *Ametek v. O'Connor,* 364 Md. 143 (2001).

*Ametek* was decided by the Court of Appeals on May 10, 2001, which was approximately one month after the General Assembly passed LE § 9–633 but eight days prior to the date that Governor Parris Glendening signed that legislation into law. In *Ametek,* the Court of Appeals reversed our decision and held that credits should be calculated based on the weeks theory, regardless as to whether that theory would benefit the employer or the injured worker. 364 Md. at 159, 771 A.2d 1072. The court said:

> Just as predictability and administrative ease are important from the standpoint of the timing of actions, so too are they important in establishing the rules governing the award of permanent partial disability benefits. It simply will not do

to have different rules, depending upon whether it is the claimant or the employer to whom the result is inequitable. Whether a credit is the amount the employer has paid or for the number of weeks the employer has paid should be determined on some principled and consistent basis and not made to depend upon which of the parties it will benefit. As the petitioner submits, "The Act should not be interpreted differently depending on the outcome in different claims."

*Id.*

In its opinion, the *Ametek* Court did not discuss LE section 9–633, nor was there any reason to do so inasmuch as the effective date of that statute had not yet arrived.

### III.

#### *Del Marr v. Montgomery County,* 397 Md. 308 (2007).

The *Del Marr* case was decided after LE § 9–633 was enacted, but the language of section 9–633 did not control the court's decision because the case did not involve a situation where "an award of permanent partial disability [was] reversed or modified by a court on appeal. . . ." LE § 9–633. Instead, the *Del Marr* case dealt with a reopening of a prior award based on a worsening of an employee's prior condition. 397 Md. at 313, 916 A.2d 1002. The sections of the Labor & Employment Article germane to cases dealing with a reopening were sections 9–627 through 9–630. *Id.* at 315, 916 A.2d 1002.

Paul Del Marr suffered an accidental injury to his back in January, 2001, while employed by the Montgomery County Board of Education ("the Board"). *Id.* at 312, 916 A.2d 1002. The Commission, in May, 2002, found that Del Marr had a 20% industrial loss of use of his body, half of which was attributable to his accidental injury and half due to a pre-existing condition. *Id.* at 312, 916 A.2d 1002. The Commission entered a *permanent* partial disability award requiring the Board and/or its insurer to pay the employee $114 per week for 50 weeks commencing on March 23, 2001, which was when the employee's payments for *temporary* total disability

ended. *Id.* at 312–13, 916 A.2d 1002. Subsequently, Del Marr experienced an increase in pain and thereafter underwent corrective surgery. *Id.* at 313, 916 A.2d 1002. Because of the worsening of his condition, the Commission, on January 9, 2003, amended its earlier award to find a 24% industrial loss of use of the body, 14% of which was due to the accidental injury. The Commission then increased Del Marr's partial disability compensation to $114 per week for 70 weeks, subject to a credit "for monies previously paid" under the May 2002 order.

Del Marr went back to work but later filed another petition to reopen the case based on further worsening of his condition. *Id.* The Commission entered a new award in which it found that Del Marr had a 33% industrial loss of use of the body, 23% of which was due to the January, 2001 accidental injury. The Commission set compensation at $223 per week for a period of 115 weeks, commencing at the end of the period for which compensation had been awarded under the January, 2003 order. The third order called for an additional gross payment of $25,645 ($223 × 115 weeks). That order was subject to a credit "for payments made" under the May, 2002 and January, 2003 orders.

The Board filed a petition for judicial review in which it contended that it should be given credit based on the weeks theory. *Id.* at 313, 916 A.2d 1002. The Board had already paid the employee compensation for 70 weeks at the rate of $114 per week for a total of $7,980 and it construed the Commission's order as limiting the credit to that dollar amount. *Id.* at 314, 916 A.2d 1002. If only a dollar credit were allowed, the employee would be entitled to $25,645 less a credit of $7,980 or $17,665. *Id.* The Board claimed that the award should be construed to require the payment of $223 per week for only 45 weeks (115–70) a total of $10,035. The circuit court agreed with the Board, and granted its motion for summary judgment. This court affirmed the circuit court's judgment. *Del Marr v. Montgomery County,* 169 Md.App. 187, 900 A.2d 243 (2006). The Court of Appeals affirmed our decision. 397 Md. at 320, 916 A.2d 1002. The Court of Appeals said in regards to the *Philip Electronics'* decision:

We agreed with the conclusion of the Court of Special Appeals that the credit should be based on the number of weeks for which compensation had been paid under the initial order and not the dollar amount paid under that order. We regarded the issue as one of statutory construction and thus strictly one of law. *After reviewing the same statutes at issue here—LE §§ 9–627 through 9–630—we declared that "[t]he plain language of the Act leads us to conclude that the Legislature expressed a commitment to the payment of permanent partial disability benefits based on a weekly framework, rather than focusing upon the total monetary value of such an award." Id.* at 221, 703 A.2d at 155. That framework governed the calculations of credits. Citing earlier decisions of this Court (principally *St. Paul Fire & Mar. Ins. v. Treadwell,* 263 Md. 430, 283 A.2d 601 (1971) and *Stapleford v. Hyatt,* 330 Md. 388, 624 A.2d 526 (1993)) and cases from other States we held that "when a claimant's initial award by the Commission is reduced pursuant to a petition for judicial review, an employer shall be entitled to a credit for the number of weeks of benefits actually paid in accordance with the original order, rather than a credit based upon the amount of money previously paid to the worker." *Id.* at 225–26, 703 A.2d at 158.

*Id.* at 315–16, 916 A.2d 1002.

The *Del Marr* Court, although it recognized that LE § 9–633 was not applicable because section 9–633 did not apply to reopening cases (*Id.* at 317, 916 A.2d 1002), nevertheless discussed section 9–633 because, it had been relied upon, to some degree at least, in *Del Marr*'s brief and was also referred to in the *amicus curia* brief filed in support of Del Marr's position by the Maryland Trial Lawyer's Association. The Court said:

We first note that neither § 9–630(d) nor § 9–633 state anything inconsistent with our holdings in *Philip Electronics* or *Ametek*. Indeed, they are entirely consistent with the view expressed in those holdings that a modification that serves to increase or decrease compensation, whether occa-

sioned by a judgment emanating from a judicial review action or a reopening, may have prospective effect only, achieved by allowing a credit for compensation previously paid calculated on a weekly basis. *There is nothing in the text of those statutes requiring a conclusion that the weekly credit approach is impermissible in a modification arising from a reopening that increases the compensation from a first tier to a second tier. Absent some clearer expression of legislative intent, we are not willing to balkanize the Worker's Compensation Law by creating special pigeon-holes with different rules.*

*Id.* at 319–20, 916 A.2d 1002. (Emphasis added).

Earlier in the *Del Marr* opinion, the court, in rejecting the injured worker's position, also mentions section LE § 9–633. That mention of the statute was discussed in the following context:

In this case, Del Marr asks us to do precisely what we declared in *Ametek* we would not do. He first seeks to distinguish *Ametek* and *Philip Electronics* on the basis that they involved modifications to an award by a court, on judicial review, rather than by the Commission on a reopening due to a worsening condition, and adds that the enactment of LE § 9–633 effectively overrules those two cases in any event and serves to resurrect a 1991 case from the Court of Special Appeals, *Norris v. United Cerebral Palsy*, 86 Md.App. 508, 587 A.2d 557 (1991), that is inconsistent with *Ametek* and *Philip Electronics.* He argues that, in the limited circumstance of a permanent partial disability award being increased through a reopening procedure from a first tier award to a second tier award—namely, his case—the Commission either may or must allow a dollar credit, even if that results in a retroactive increase in compensation. We are not impressed with those arguments.

*Id.* at 317–18, 916 A.2d 1002.

### E. Legislative history of LE § 9–633.

What is now LE § 9–633 had its origin in Senate Bill 877 and House Bill 1278, both of which were introduced in the

2001 session of the Maryland General Assembly.[3] At the time that LE § 9–633 was passed, and at present, the word "compensation," insofar as is here pertinent, was defined as meaning: "The money payable under this title to a covered employee or the dependents of a covered employee." *See* LE section 9–101(e)(1).[4] And, as previously mentioned, section 9–633 reads, in material part, "[i]f an award of permanent partial disability *compensation* is reversed or modified by a court on appeal, the payment of any new *compensation* awarded shall be ... subject to a credit for *compensation* previously awarded and paid...." (Emphasis added). For our purpose, the key word in LE § 9–633 is "compensation."

Bill 877, prior to passage, was considered by the Senate Finance Committee. The Finance Committee floor report was written prior to the Court of Appeals decision in *Ametek*. When the report was written, under governing Maryland precedent, if the employer, on appeal, succeeded in lowering the percentage of permanent partial disability, the employer was entitled to a "weeks credit," *Philip Electronics v. Wright*, 348 Md. at 220–21, 703 A.2d 150, but if the employee was successful on appeal by raising the percentage of disability, the employer was entitled to only a dollar credit. *Ametek*, 126 Md.App. at 123, 727 A.2d 437. In other words, whether a dollar credit or a weeks credit was applied depended on who won on appeal. As will be seen, the legislative intent of both the Maryland House of Delegates and the Senate was to provide a uniform method of calculating credit for past payments regardless as to which party won on appeal.

A report by an analyst employed by the Senate Finance Committee appears in the legislative file kept by the Department of Legislative Reference. That report reads:

---

**3.** HB 1278 and SB 877 were cross-filed bills. Although both bills passed both houses, HB 1278 was signed and SB 877 was vetoed as a duplicate.

**4.** In the definition section, the word "compensation" is also defined to include "funeral expenses payable under this title." *See* LE section 9–101(e)(2).

House Bill 1278 is similar to Senate Bill 877[,] which the Senate passed earlier this session.

House Bill 877(sic) provides that, if an award of permanent partial disability under the State's Workers' Compensation laws is reversed or modified by a court on appeal, the payment of any new compensation awarded will be subject to a credit for compensation previously awarded and paid.

*Current law is silent as to whether a credit should be in the form of compensation previously paid or weeks previously paid.*

(Emphasis added).

A lengthy summary of Senate Bill 877 is contained in the Senate Finance Committee's floor report. That summary reads, in relevant part,

If an award of permanent partial disability compensation is reversed or modified by a court on appeal, the payment of any new compensation awarded shall be subject to a credit for compensation previously awarded and paid.

- *A dollar credit, as opposed to a number of weeks paid credit, is more equitable to all parties (especially for consistency, whether the award is increased or decreased on appeal).*
- The law is silent on the issue of how the credit is to be calculated—if this is not addressed in the law, then the court will need to decide—*it is clear that they are struggling with this.*

(Emphasis added).

In the context of the portion of the summary just quoted, the phrase "compensation previously awarded and paid" clearly means dollars previously awarded and paid—not weeks.

The Finance Committee's report goes on to summarize, accurately, the facts and holding by the Court of Appeals in *Philip Electronics North America v. Wright* and our decision in *Ametek v. O'Connor,* both supra.

The House legislative file kept by the Department of Legislative Reference, shows that two organizations presented their

views concerning the proposed legislation. They were the Maryland Chamber of Commerce and the Alliance of American Insurers. Representatives of each of those organizations wrote letters to the House Finance Committee, which considered House Bill 1278. The Chamber of Commerce starts out its letter of support, by stating:

"HB 1278 requires employers *to be credited for the amount of workers' compensation dollars previously paid,* rather than the number of weeks paid, in those instances where a permanent partial disability award is reversed or modified by the Court of Appeals."

The Chamber of Commerce's letter goes on to summarize the Court of Appeals's opinion in *Philip Electronics North America v. Wright* and this court's opinion in *Ametek v. O'Connor.* The summary is extensive and accurate. The letter expresses the view that House Bill 1283 should be enacted because "employers should be provided with a fair and *consistent* crediting of benefits previously paid when the workers' compensation award is modified on appeal."

William Kress, Esquire, wrote a letter to the House Finance Committee on behalf of The Alliance of American Insurers. In his letter, Mr. Kress provides an accurate summary of our decision in *Ametek* and the Court of Appeals's decision in the *Philip Electronics* case. That letter spells out, in mathematical terms, how the amount payable is affected by use of a credit based on a weeks theory as opposed to a dollar theory. In his letter, Mr. Kress reached the same conclusion as did the Chamber of Commerce. He states: "House Bill 1278 will require all credits to be calculated based upon the actual dollar amount of benefits paid out to the Claimant. A dollar credit, as opposed to number of weeks paid credit, is equitable to all parties."

Nothing in the records kept by the Department of Legislative Reference provides any indication that the legislature, when it considered House Bill 1278 and Senate Bill 877, intended that credits be based on a weeks rather than a dollars theory.

## IV.

### The arguments of the parties.

In his brief, Mr. Swedo focuses primarily on the language used in LE § 9–633 together with the definition of the word "compensation" found in LE section 9–101(e)(1). According to Mr. Swedo, when those two statutory provisions are read in tandem, it is clear that the dollar credit theory should be utilized. Appellant also argues that his position is supported by the legislative history of LE § 9–633, and asserts that it was logical for the legislature to treat cases where an award of permanent partial disability compensation has been reversed or modified by a jury (or trial court) on appeal differently from cases dealing with a reopening of a case. According to Mr. Swedo, this is so because when a modification of an award (either up or down) is made by a jury or a trial judge in a judicial review action, it is because the jury [or court] has found that the award made by the Commission was in error from the outset and, therefore, because the Commission's award was wrong from the beginning, both parties should be placed in the same position they would have been in had the Commission not erred. On the other hand, when an award is modified due to a reopening, it cannot be said that the Commission was ever in error.

In support of its position that credit should be granted based on weeks, the employer argues, citing the Court of Appeals's decisions in *Philip Electronics, Ametek & Del Marr, all supra,* that "it is clear from an examination of . . . [Maryland] case law that the Court of Appeals has consistently and unequivocally held that a credit is to be issued in terms of weeks and not dollars."

The employer characterizes the discussion by the Court of Appeals of LE § 9–633 in *Ametek* as a "holding" by that court and maintains that this "holding" completely undercuts Mr. Swedo's position.

In regard to the legislative history of LE § 9–633, appellee asserts that appellant "has not produced any finite statement from anyone other than those interested parties that the

Legislature intended for ... [LE] § 9–633[to] overturn years of precedent and apply a dollar approach to credits as opposed to the long standing weeks approach...." More specifically, the employer argues:

If it was truly the "intent" of the Legislature to overrule the existing law in place at the time of the enactment of ... [LE] § 9–633, as Claimant alleges, that the Legislature would have specifically said so in the statute. Indeed, it is a well-settled principle that the Legislature acts with full knowledge of existing laws and that, if it is intending to overrule a judicially-created doctrine or interpretation of law, it clearly and unequivocally does so. *Mayor & City Council of Baltimore v. Hackley,* 300 Md. 277, 283, 477 A.2d 174 [1174], 1177 (1984). Here, the Legislature is presumed to have enacted Md.Code Ann., Lab. & Empl. § 9–633 with full knowledge of the decision of *Philip Electronics* and with knowledge of the pending state of *Ametek.* If the Legislature had intended to supersede *Philips [Philip ] Electronics* and the weekly credit approach, it would have explicitly stated so. *See Hackley,* 300 Md. at 277, 477 A.[2d] at 1177. Indeed, where there is the "presumption that the Legislature acts with the knowledge of existing laws, coupled with [a later enacted] statute's failure to mention the existing law, [there] is an *indication that the Legislature intended that the existing law remain viable."* *Burch v. United Cable Television of Baltimore Limited Partnership,* 391 Md. 687, 702, 895 A.2d 980, 988 (2006) (emphasis added). Thus, here the Legislature's explicit absence of any intent to overrule *Philip Electronics,* which was the settled law providing for weekly credits, indicates that the Legislature's enactment of Md.Code Ann., Lab. & Empl. § 9–633 was merely intended to codify the existing law. Claimant's production of a few statements by participants in the proceedings at that legislative session is wholly insufficient to overcome this presumption.

Lastly, the employer, relying exclusively on the language used by the Court of Appeals in *Ametek,* claims that "public

policy supports the well-settled precedent using a weeks approach as opposed to a dollar approach for credits."

## V.

### Analysis

 Where an order of the trial court "involves an interpretation and application of Maryland, constitutional, statutory or case law," an appellate court must determine whether the trial court's conclusion was legally correct under a *de novo* standard of review. *Schisler v. State*, 394 Md. 519, 535, 907 A.2d 175 (2006). In this case, the parties agree that a *de novo* standard of review must be utilized because the only question presented involves an issue of statutory interpretation.

 The starting point in any case involving statutory interpretation, is to determine the intention of the General Assembly in enacting the statute. *Design Kitchen & Baths v. Lagos*, 388 Md. 718, 728, 882 A.2d 817 (2005). In doing so, the reviewing court must give the words the Legislature used their ordinary and natural meaning. *Mayor of Baltimore v. Chase*, 360 Md. 121, 128, 756 A.2d 987 (2000), citing *Oaks v. Connors*, 339 Md. 24, 35, 660 A.2d 423 (1995). In the event that the words of a statute, "construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning," the court will give effect to the statute as the language is written. *Moore v. Miley*, 372 Md. 663, 667, 814 A.2d 557 (2003). In construing a statute, we may neither add nor delete language to "reflect an intent not evidenced in that language." *Condon v. State*, 332 Md. 481, 491, 632 A.2d 753 (1993), and courts must guard against "forced or subtle interpretations that limit or extends its application." *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 73, 517 A.2d 730 (1986).[5]

---

**5.** We give deference to a constant and long-standing construction of a statute by an agency charged with administering it. *Marriott Employees v. MVA*, 346 Md. 437, 445, 697 A.2d 455 (1997). In the case *sub judice*, the agency (i.e., the Commission) construed LE § 9–633 to mean

■ Section 9–633 uses the word "compensation" three times. In regards to credits, it requires that "any new compensation awarded shall be ... subject to a credit for compensation previously awarded and paid." LE § 9–633(1). As previously mentioned, the word "compensation" is defined in LE § 9–101(e). That meaning is the same now as it was in 2001 when section 9–633 was enacted. Moreover, the statutory definition is in complete accord with what the word means in common parlance. The dictionary definition of compensation is: "1) the act or state of compensating. 2) The state of being compensated. 3) something given or received as an equivalent for services, debt, loss, injury suffering ... etc.; indemnity. The insurance company paid him $2,000 as compensation for the loss of his car...." Webster's Encyclopedia Unabridged Dictionary of the English Language (1989), p. 300.

The Court of Appeals, on previous occasions, has had occasion to focus on the meaning of the word "compensation," as defined in the Worker's Compensation Act. One such occasion arose in *Chanticleer Skyline Room v. Greer*, 271 Md. 693, 319 A.2d 802 (1974). The question presented in *Chanticleer* concerned the interpretation of Maryland Code (1957, 1985 Repl. Vol.), Article 101 § 40(c), which restricted the Commission's ability to reopen prior awards of compensation to five years following the last payment of compensation.[6] The court held that fees paid to claimant's attorney were "compensation" within the meaning of Section 40(c). The court reached that conclusion "[b]ecause no one here disputes that the Worker's Compensation Act made payments of an attorney's fee" both a "money allowance" and one [that] is "provided for in the Article."

---

that credits should be granted based on the weeks theory. But, on July 12, 2012, which was approximately two years after the Commission ruled in the case *sub judice*, it decided that credits are to be granted under the dollar theory. *See* case no.W005793, *George H. Eisenberg v. Prince George's County Executive and County Counsel.* Thus, the Commission's interpretation has not been consistent.

**6.** What was previously codified as Art. 101, § 40(c), is now found in LE § 9–736(b).

In *Vest v. Giant Food Stores, Inc.*, 329 Md. 461, 620 A.2d 340 (1993), the Court of Appeals was once again called upon to interpret the meaning of the five-year limitations period set forth in Art. 101 § 40(c). The claimant, *Vest*, received temporary partial disability benefits intermediately from December 20, 1980, to June 12, 1981 and from January 28, 1982 to March 6, 1982. *Id.* at 464–65, 620 A.2d 340. He received his last payment on April 5, 1982. *Id.*

More than five years later, in the summer of 1987, *Vest* had two lower back operations that he alleged were related to his November, 1980 injury. *Id.* at 465, 620 A.2d 340. *Giant*'s insurer paid for both low back operations. *Id.* In 1988, *Vest* made a claim to *Giant*'s insurance carrier asking for compensation for his permanent partial disability. *Id.* The insurer denied the claim on the basis that it was barred due to the five-year limitation period set forth in Art. 101 § 40(c).

*Vest* filed a petition with the Commission asking to reopen his claim to determine the nature and extent of his disability. *Id.* The Commission denied *Vest*'s request on the grounds that it was time barred. *Id.* The Circuit court affirmed the Commission's order as did this court. *Vest v. Giant Food, Inc.*, 91 Md.App. 570, 605 A.2d 627 (1992). The issue that the Court of Appeals was called upon to decide was whether the date of the last compensation payment was on April 5, 1982 or on the date that *Giant*'s insurer last paid a medical bill for *Vest*'s operations. In answering that question, the *Vest* court first focused on the definition of the word "compensation" as set forth in Article 101, § 67(5) of the Md. Annotated Code. As explained *infra*, the section 67(5) definition was, in all material respects, the same as the definition presently set forth in LE § 9–101(e)(1). The *Vest* Court said:

> The Act defines "compensation" as "the money allowance payable to an employee or to his dependents as *provided for in this article....*" § 67(5) (emphasis added). *This definition of compensation is broad and encompasses most forms of payment to employees provided under the statute,* although it excludes the payment of medical expenses. *Holy Cross Hosp. v. Nichols*, 290 Md. 149, 161–63, 428 A.2d 447,

453–54 (1981). Since §§ 36(2) and 36(6) of the Act provide for the payment of a percentage of an employee's weekly salary due to temporary total disability and temporary partial disability, *the payments Vest received for the injuries (excluding reimbursement of medical expenses) were "compensation" under the Act.*

*Id.* at 467–68, 620 A.2d 340. (emphasis added).

The only difference in the definition of compensation as set forth in Article 101 § 67(5) and the definition currently set forth in LE Section 9–101(e)(1) is that section 9–101(e)(1) uses the phrase "the money payable under this title" whereas § 67(5) of Article 101 uses the phrase "the money *allowances* payable ... as provided for in this Article...." (Emphasis added). As can be seen, that difference is not substantive.

In *Vest,* the Court of Appeals affirmed our decision that the claim was time—barred because it was made over seven years after the last compensation payment. The *Vest* court's characterization of the word "compensation," as "broad" and encompassing "most forms of payment to employees provided under the [Act]," buttresses Mr. Swedo's argument that when the Legislature used the word "compensation" in LE § 9–633 it meant money paid to the injured worker, which, under the Worker's Compensation Act, can only be made in dollars. Also supporting the employee's position is the court's statement that "the payments received for the injuries ... were compensation under the Act." In other words, the dollars Mr. Swedo received from the employer for 148 weeks constituted "compensation" under the Act.

In *Stachowski v. Sysco Food Services of Baltimore, Inc.,* 402 Md. 506, 937 A.2d 195 (2007), the Court of Appeals was required to determine the meaning of the phrase "last compensation payment" as that phrase is used in the provision setting the limitation period applicable to reopening cases *Id.* at 525, 937 A.2d 195.[7] The Court began by observing that in

---

**7.** When *Stachowski* was decided, and at present, LE § 9–736(b) provided, in relevant part:

past cases, the Court, in determining the last payment of compensation "simply looked to the date that the claimant last *received* compensation. . . ." *Id.* at 520, 937 A.2d 195. (quoting *Vest, supra* 329 Md. at 477, 620 A.2d 340). (Emphasis added). The *Stachowski* Court then turned its attention to the word "payment" as used in the phrase "last compensation payment." The court elected to use the definition of payment set forth in Black's Law Dictionary, 1165 (8th Ed.) p. 2994. The court stated:

We look first at the dictionary definition of the word "payment" for insight as to legislative intent. Dictionary definitions are not—dispositive as to the meaning of statutory terms. *Marriott,* 346 Md. at 447, 697 A.2d at 460. Nonetheless, such definitions provide a useful starting point for discerning what the legislature could have meant in using a particular term. 2A Norman Singer, Sutherland Statutory Construction § 47.28 (7th ed.2007). Black's Law Dictionary defines "payment: as:

"1. Performance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation.

2. The money or other valuable thing so delivered in satisfaction of an obligation."

*Id.* at 525–26, 937 A.2d 195.

The *Stachowski* Court held that "the date of the last *compensation* payment for the purposes of the limitation provision in [LE] § 9–736(d) of the Worker's Compensation Act is the date when payment is received by a claimant or his or her lawful representative." *Id.* at 531, 937 A.2d 195.

---

(b)(1) The Commission has continuing powers and jurisdiction over each claim under this title.

(2) Subject to paragraph (3) of this subsection, the Commission may modify any finding or order as the Commission considers justified.

(3) Except as provided in subsection (c) of this section, the Commission may not modify an award unless the modification is applied for within 5 years after the latter of:

(i) the date of the accident;

(ii) the date of disablement; or

(iii) the last compensation payment.

(Emphasis added). Thus, a worker receives compensation payments when he receives money from his employer/insurer.

We turn next to the parties' respective positions regarding the legislative history surrounding the enactment of LE § 9–633. The employer's assertion that "the [L]egislature [has] unequivocally reinforced the concept of a credit for weeks and not dollars" is plainly not accurate. As mentioned earlier, the floor report of the Senate Finance Committee discusses, in detail, the status of Maryland case law as it existed in March of 2001. At that time, the Court of Appeals had not decided *Ametek v. O'Connor, supra.* And, based on this court's decision in *Ametek,* the interpretation then in effect was that if an award was *increased* upon judicial review, the employer was not entitled to a credit based upon the number of weeks for which benefits were paid; instead the employer was only entitled to a credit for the total dollar amount actually paid to the claimant prior to the increase. 126 Md.App. at 123, 727 A.2d 437. But, if the award was *decreased* on appeal, the employer was entitled to a credit merely for the weeks compensation had been paid. *Philip Electronics North America,* supra, 348 Md. at 218, 703 A.2d 150. The summary of Senate Bill 877, prepared by the Finance Committee, noticed this inconsistency, and commented that the "Court of Appeals has not ruled yet." The report also states that "it is clear that they [the Maryland Appellate Courts] are struggling with this." Also, undercutting the employer's argument as to legislative history, is the statement in the Senate Finance Committee's report that ["[a] dollar credit, as opposed to number of weeks paid credits, is more equitable to all parties' (especially for consistency, whether the award is increased or decreased on appeal)]." The report by the Finance Committee's analyst also undercuts the employer's argument ("current law is silent as to whether a credit should be in the form of compensation previously paid or weeks previously paid"). We therefore, disagree with the argument that the appellant "has not produced any finite statements from anyone other than interested parties that the Legislature intended for ... [LE] § 9–633 to overturn years of precedent and apply a

dollar approach to credits as opposed to the long standing weeks approach. . . . "

We next address two related arguments made by the employer. First, the employer maintains that if it was truly the intent "of the Legislature to overrule the existing law in place at the time of the enactment of . . . [LE] § 9–633, as Claimant alleges, then the Legislature would have specifically said [so] in the statute," and second, that the legislative history reveals an absence of any "explicit" intent to overrule *"Philip Electronics,* which was the settled law providing for weekly credits [at the time section 9–633 was enacted]." We will consider the last contention first. As the Senate Finance Committee Report showed, the law was not "settled" as of the time Senate Bill 877 and House Bill 1278 were enacted. In regard to the appellee's related contention [that the Legislature would have said so if it intended to overrule existing law], the short answer is that the General Assembly, in effect, did make clear its intention to overrule *Philip Electronics* in electing to use the term "compensation," when it directed how credits should be calculated. Under the 2001 statute, credits were to be given to the employee for compensation [i.e., money] previously awarded and paid. Moreover, the contents of the Senate Finance Committee floor report clearly shows that the Senate knew that if Senate Bill 877 became law, the decision in *Philip Electronics* would be overturned, but the decision by this Court in *Ametek* (insofar as it dealt with increases in compensation on appeal) would not be overturned.

Finally, before leaving the subject of legislative intent, the question arises: Why would the Legislature direct that if an award is modified on appeal that payment of new compensation be subject to a credit "for compensation previously paid" if the employer's position is correct that the General Assembly meant that new compensation should be subject to a credit for the weeks of compensation previously paid? That question answers itself. Plainly, the Legislature did not intend the meaning that the employer suggests.

We next consider the employer's argument that what the court said in *Del Marr* about section 9–633 constituted a "holding." If any of the language in *Del Marr*, which the employee relies upon, was in fact a holding, we would, of course, be bound by it. Clearly, however, the language in *Del Marr*, quoted supra, was simply *dicta*, because the claimant in that case, Paul Del Marr, had never had an award of permanent partial disability compensation reversed or modified by a court on appeal, which is the only situation where LE § 9–633 is applicable. The only reason that section 9–633 was even mentioned in the opinion, was because the claimant, while admitting that section 9–633 was inapplicable, nevertheless argued that it showed what the Legislature intended in reopening the case. *Del Marr, supra*, 397 Md. at 319, 916 A.2d 1002. Although the *Del Marr* opinion does mention "legislative intent" in regard to section 9–633, there is no discussion of the legislative history in that opinion. More important, in its discussion of section 9–633, there is no mention of the definition of "compensation." This is of great importance because section 9–633 cannot be correctly interpreted without consideration of the meaning of that term.

In summary, we agree with all of the arguments of appellant that have been summarized *supra*. The bottom line is that the employer is entitled to a dollar credit for the amount of money it paid for 148 weeks. The result is required by section 9–633. First, this is a case where "an award of permanent partial disability compensation [was] . . . modified on appeal." LE § 9–633. Second, the modification required that the "new compensation [i.e. money payable under Title 9 to a covered employee"] be paid to Mr. Swedo in the amount of $174,825 ($525 per week for 333 weeks). Third, under LE, section 9–633(1) the new compensation is "subject to a credit for compensation [i.e. money payable under Title 9 to a covered employee"] previously awarded and paid. The amount previously awarded and paid by the employer was $34,632 ($148 × 234). Thus, the employer or its insurer must pay Mr. Swedo a total of $140,193 ($174,825–$34,632).

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY WITH INSTRUCTIONS TO ENTER SUMMARY JUDGMENT IN FAVOR OF THE APPELLANT AND TO REMAND THE CASE TO THE MARYLAND WORKERS' COMPENSATION COMMISSION WITH INSTRUCTIONS TO ENTER A CREDIT IN FAVOR OF APPELLEE CALCULATED IN ACCORDANCE WITH THE VIEWS EXPRESSED IN THIS OPINION; COSTS TO BE PAID BY APPELLEES.